**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Edward C. KINSTLER,
Defendant-Appellant.**

**No. 86–1116.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 12, 1987.

Decided March 10, 1987.

Carleen R. Arlidge, San Jose, Cal., John M. Wadsworth, for plaintiff-appellant.

Thomas T. Couris, Sacramento, Cal., George Williamson, San Francisco, Cal., for defendant-appellee.

Before CHAMBERS, NELSON and NOONAN, Circuit Judges.

NOONAN, Circuit Judge:

Edward C. Kinstler was indicted on charges of conspiracy to manufacture and distribute methamphetamine, of manufacturing methamphetamine, and possessing methamphetamine with intent to distribute, offenses under 21 U.S.C. §§ 846, 841(a)(1) (1982). He pleaded guilty to the conspiracy count, reserving the right to appeal the court's determination of his motion to suppress evidence. The sole issue on appeal is whether the evidence should have been suppressed because the affidavit on which the search warrant was obtained was prepared with reckless disregard for the truth under *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). The district court found that the affidavit had not been prepared with such disregard and that, in any event, purged of minor inaccuracies, the affidavit was sufficient to justify the warrant. We affirm the judgment of the district court.

### Facts

On June 12, 1985, Wayne R. Tellis, a peace officer for the California Department of Justice, Bureau of Narcotic Enforcement, sought a search warrant for the premises at 6531 Lincoln Road in Sutter County, California, a residence at 944 Graham Hill Road, Santa Cruz, California, and three vehicles identified by license number. The purpose of the search was to look for methamphetamine and implements used in its manufacture.

Tellis' affidavit indicated that he had been a narcotics agent for 12 years with the California Department of Justice; that he had participated in at least 1,000 investigations relating to controlled substances; that he had interviewed at least 100 persons actively involved in methamphetamine transactions; and that he had investigated over 25 cases dealing with the manufacture of methamphetamine. He stated that on May 31, 1985 he had been conducting surveillance of a company called Grau-Hall Scientific in Sacramento County and had determined that a young white male in his early twenties had purchased a substantial quantity of ethyl ether and acetone from Grau-Hall. He followed the Dodge Ramcharger into which the young man put the purchased materials. The Dodge took a zigzag route, apparently intended to see if anyone was following it. The driver eventually purchased a half dozen plastic crates commonly called milk carton containers. Tellis also observed in his car two pieces of aluminum flex ducting. The car eventually eluded Tellis, but within one half hour was found parked at a rural farm residence identified by the mail box at the driveway as 6531 Lincoln Road.

Tellis was aware that ethyl ether and acetone were two chemicals frequently used in the manufacture of methamphetamine and that plastic containers of the kind purchased were often used because they were not easily contaminated by corrosive chemicals. The ducting was the kind that Tellis had observed at other methamphetamine laboratories. The evasive maneuvers of the car were characteristic of drug dealers trying to avoid surveillance. It had also been Tellis' experience that manufacturers of methamphetamine often did it in the country to avoid discovery and to keep the offensive odors generated by the process from being detected by neighbors. In addition, a rural area made it easier for a manufacturer to detect surveillance, and out-buildings or barns were good places to keep the chemicals used in the manufacture.

Surveillance of the Lincoln Road address was put into effect and a parked vehicle was observed there whose owner was identified by the registration as David A. Lyle, a person identified by narcotics agents as a trafficker in methamphetamine. The owner of the Dodge Ramcharger was identified by its registration as Lynda Treadway of 944 Graham Hill Road, Santa Cruz. The car itself was observed on June 2, 1985 in front of the latter address.

Contact by Tellis with the sheriff's office in Santa Cruz County brought the information that 944 Graham Hill Road had been investigated on March 24, 1983 in connec-

tion with a suspicious shooting in which Edward C. Kinstler had been the victim. Various weapons had been seized at the house along with a large brown safe.

The Santa Cruz sheriff had also gone to 750 Park Drive, Ben Lomond, after a major fire in May 1983 at this address, and had within the burned remains of the laboratory found five gallon chemical cans, vacuum pumps, a chemical supply catalog and several plastic containers; the odor from the burnt shed was consistent with an odor smelled on previous occasions when a methamphetamine laboratory had been destroyed by fire. A search pursuant to warrant of 750 Park Drive led to seizure of 12 pounds of methamphetamine and two semiautomatic submachine guns. These items were inside a safe identical to the one at the Graham Hill address. The safe was found to have been purchased by someone called James Treadway and originally delivered to the Graham Hill address. The picture of Lynda Treadway was found at the Park Drive address. James Treadway was determined to be an alias for James Peeraer. Peeraer was convicted and imprisoned for crimes connected with the Park Drive laboratory.

Tellis further discovered that Lynda Treadway was now living at the Graham Hill Road address as the common law wife of Edward C. Kinstler of the same address.

On June 5 Tellis observed a young woman use a burn barrel (a large metal drum used to burn refuse) at the back of the Lincoln Road property. She was then observed carrying multiple brown boxes and several black plastic bags. On June 6 Tellis received information from a narcotics task force officer in the San Jose Police Department that he had conducted several investigations involving Lynda Treadway and Edward C. Kinstler and that several confidential informants had informed him that both of them were involved in the distribution and manufacture of methamphetamine. The San Jose officer also said that the Dodge Ramcharger had at one time been owned by a company which was owned by James Lopaz, another suspected methamphetamine dealer he had investigat-

ed. The officer also said that a 1977 Toyota bearing the personalized license plate PORSCHE (which had been observed at the Lincoln Road property) was frequently driven by Kinstler and had often been seen parked that the Graham Hill Road address. The officers had received information in August of 1984 indicating from a confidential source that Kinstler and James A. Peeraer were involved in making methamphetamine.

On June 7, 1985 another narcotics agent found material at a dump, which consisted of items including a five gallon empty can of ethyl ether and two five gallon empty cans of acetone. The material had been carried from the Lincoln Road property by a pick-up truck that had engaged in deliberately evasive maneuvers to avoid surveillance.

Tellis stated his belief that there was now an illicit laboratory at the Lincoln Road address and that the persons who ran it were at the Graham Hill Road address, it being typical of such conspirators to separate their residence and place of manufacture. Tellis considered it likely that the Ramcharger, the Toyota with the PORSCHE license plates, and the pick-up would all contain evidence of contraband.

On the basis of this affidavit, which in its original form runs 30 typed pages, the warrant issued which is in dispute here.

### Issue

Kinstler attacks the affidavit because it failed to say that Peeraer, despite his Treadway alias, was not related to Lynda Treadway and had been in prison since 1983. Kinstler also objects that the affidavit failed to say that no drugs or drug equipment had been found at the Graham Hill address when it was searched in 1983. Kinstler further attacks misstatements as to the vehicles: the Dodge Ramcharger had in fact never been owned by a Lopaz company, and Kinstler had never been seen driving a Toyota with the PORSCHE plate. If these mistakes were the result of deliberate or reckless falsehood, the evidence secured in pursuance of the warrant should be suppressed.

## Analysis

 The omissions as to Peeraer were clearly immaterial. There was no confusion between Peeraer and Kinstler and the fact that Peeraer had been in prison since 1983 had no relevance to the warrant. Tellis made it clear that Peeraer was in jail as a result of the 1983 search of the Park Drive house. He did not have to say that anyone had been arrested as a result of the 1983 search of Graham Hill Road—the nonsuccess of that search was implicit in the affidavit. The mistakes as to the vehicles were the result of some confusion in the transmission of information, and the confusion did not subtract from the substance of the affidavit. In the totality of facts meticulously set out by Tellis, the minor mistakes were inconsequential. There is no evidence that they were the result of deliberate or reckless falsehood. There is no basis under *Franks, supra* for reversing the district court.

What the affidavit did present amply and accurately was information that two of the principal ingredients in the manufacture of methamphetamine had been purchased and brought to the Lincoln Road property, a remote location. Other materials brought there or in use there—the plastic containers, the duct and the brown barrel—were also indicia of a methamphetamine laboratory operation. The material taken to the dump was consistent with such an operation. The evasive maneuvers of the truck going to the dump and the evasive maneuvers of the Dodge Ramcharger on May 31 suggested criminal conduct that had to be hidden. The information the narcotics agents possessed about past activities of Kinstler, Lynda Treadway and David Lyle constituted additional circumstances to be taken into account in assessing the significance of the activity observed at Lincoln Road.

 Entirely apart from the minor omissions and misstatements, Tellis' affidavit furnished a basis for the issuer of the warrant "to make a practical common sense decision" that there was "a fair probability" that evidence of a crime would be found at the locations for which the warrants were sought. *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). Not only does the appellant fail to prove his case under *Franks,* but the totality of the circumstances set out by Tellis constituted probable cause for the warrant to issue.

No single detail among those set out in the affidavit was itself conclusive. Rather, the details converged to form a pattern. As is normally the case when a human mind is making a judgment of probability, it is the convergence and the pattern that are determinative. Convergence and pattern reduce the likelihood of accident or coincidence. When there is enough convergence and pattern, as happened here, there is a fair probability that further information produced by a warrant will confirm the inferences already formed.

AFFIRMED.