**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Enrique ESPINOSA,
Defendant-Appellant.**

No. 86–5008.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 10, 1987.

Decided Sept. 9, 1987.

Joseph T. Vodnoy, Los Angeles, Cal., for defendant-appellant.

Robert C. Bonner, Los Angeles, Cal., for plaintiff-appellee.

Before NELSON, HALL and THOMPSON, Circuit Judges.

NELSON, Circuit Judge:

Espinosa appeals from his conviction under 21 U.S.C. § 841(a) (1982) for one count of possession of cocaine with intent to distribute. He challenges the district court's rulings on nine issues. We have jurisdiction under 28 U.S.C. § 1291 (1982). We affirm.

## BACKGROUND

At approximately 12:00 p.m. on June 25, 1985, two police officers in a patrol car near Orion and Nordhoff streets in Van Nuys, California, observed the defendant Espinosa holding a large amount of money in his hand and speaking to another man. The area is known for drug trafficking. The defendant appeared to be about to give the money to the second man. When the two men saw the officers and the officers approached them, the defendant put the money in his pocket and began to walk away at a fast pace. The second man ran up the stairs of an apartment building and disappeared. The officers, believing they were witnessing a drug transaction, approached the defendant and asked him for identification. The defendant said that he had none. The officers told him that he was being detained for suspicion of involvement in narcotics sales and conducted a weapons pat-down, which revealed a bulge caused by about $300 in cash. The defend-

ant stated that his name was "Henry Rodriguez," that his birth date was February 10, 1955, and that he lived at 14319 Addison, in Sherman Oaks. He said he was visiting a friend in the area, but could not identify the friend or explain why his friend had run away.

While Officer Keenan questioned the defendant, Officer Baello ran the name "Henry or Enrique Rodriguez" through the police car computer. The computer check reported a misdemeanor traffic warrant for an Enrique Rodriguez with a birth date of February 4, 1954, and with height and weight listings (5'5" and 139 lbs.) different from the officers' initial estimates (5'7" to 5'10" and 170 to 180 or 200 lbs.).[1] Officer Keenan told the defendant that he would be taken to the Van Nuys police station for verification of the traffic warrant. The defendant protested that he was not subject to any traffic warrant and requested to be taken to his car approximately 150 to 250 feet away, where he had a driver's license. With Espinosa's consent, the officers opened the car door and retrieved a brown purse containing a driver's license with the name Henry Rodriguez, a birth date of March 5, 1954, and an address of 6660 Chatsworth, North Hollywood. Because of the discrepancies between the birth date and address the defendant gave orally and those listed on his license, and the officers' knowledge that no such street address existed, Officer Baello ran a second computer check, which revealed a felony warrant for an "Anibal Rodriguez," an armed and dangerous suspect, who had a birth date of February 10, 1955.

Officer Keenan asked the defendant's permission to search the car and then the trunk. The officers later declared that Espinosa consented; Espinosa declared that he did not. The officers found no weapons or contraband in the car, but found that the registration was not in the defendant's name. In the trunk, the officers found an open canvas bag with a large sum of mon-

---

1. Espinosa himself apparently told the officers that he was 5'6". 2 Reporter's Transcript of Proceedings ("R.T.") at 48, 82. Officer Keenan later testified that he believed that the weight discrepancy could have resulted from the defendant's gaining weight since the issuance of an old warrant.

ey (later found to total $146,400). The bag was seized and the defendant was taken to the police station.

At the station, a narcotics dog twice alerted to the presence of cocaine residue on the money. Police learned Espinosa's true identity from a fingerprint check and released him. The money was retained for narcotics forfeiture processing by federal authorities; some keys and a card from his wallet for an apartment building on Sepulveda Boulevard were also retained.

On August 14, 1985, Los Angeles Police Department Detective Altieri received a tip that a male Latin between 30 and 40 years old, 5'8" to 5'10" tall, weighing about 200 pounds, with black hair and full beard, and residing in Room 200 of the Park Plaza Motel in Canoga Park, was believed to be dealing in narcotics. Altieri began investigating the tip. He learned that, although the room was rented to "Diane Pauley," a male Latin fitting the above description actually occupied the room. Altieri ran a computer check· on "Diane Pauley's" license plate number and found that the car was registered to Rochelle Karen Millet, who was awaiting trial on a cocaine charge. Motel personnel identified a photograph of Millet as the woman who rented the room.

Altieri and others commenced surveillance of the apartment later that day. Over the next fourteen days, officers observed the defendant on several occasions driving a grey BMW and a Honda (neither of which could be traced to him) to a shopping center, a gas station, a restaurant, and a parking lot, where after placing calls on pay telephones he met briefly with individuals who drove up in cars and with whom he exchanged shopping bags and small plastic bags. On one trip he was given a full length fur coat. Immediately before or after three of the meetings, he traveled to an apartment complex on Sepulveda Boulevard, which he entered and then left within a brief period. On one occasion when the officers were able to view him at close range, the defendant was seen entering the Sepulveda apartment with a shopping bag whose sides stretched because of its contents and then leaving with an empty bag. On a second occasion, he entered empty-handed and left with a paper shopping bag. The name listed on the Sepulveda apartment mailbox and building directory was "J. Perez." The defendant had no visible means of support and did not act like a normal tourist. Altieri, an experienced narcotics detective of some fourteen years, formed the opinion that the defendant was engaged in narcotics transactions using the Sepulveda apartment as a "stash pad" for money or drugs.

On August 28, 1985, Detective Altieri and his partner sought and obtained a search warrant for a Park Plaza Hotel room into which the defendant had moved, the Sepulveda apartment, the BMW and the Honda, and

> a male Latin, name unknown, referred to in affidavit as John Doe # 1. Described as male Latin, approximately 35 years of age, 5'8"/5'10", approximately 200 pounds with black hair and black full beard.

The police searched the defendant at the Park Plaza apartment and found $13,000 in cash, an address book, and keys to the Sepulveda apartment. Nothing was found in the Park Plaza apartment. In the Honda, police found a utility bill for the Sepulveda apartment. In the Sepulveda apartment, police found approximately 69 pounds of cocaine, mixing and packaging equipment, and narcotics ledger books whose entries matched those in the defendant's address book. Following the search, the police arrested Espinosa.

On September 24, 1985, Espinosa was indicted under 21 U.S.C. § 841(a)(1) for one count of knowing and intelligent possession of approximately 69 pounds of cocaine with intent to distribute. The same day, the government filed an information charging that Espinosa's prior conviction for sale or transportation of cocaine under Cal. Health & Safety Code § 11352 constituted a prior conviction that would warrant a sentence enhancement under 21 U.S.C. §§ 841(b), 851. Espinosa pleaded not guilty.

The district court denied Espinosa's motions to suppress evidence obtained on June 25, 1985, and August 28, 1985. After trial,

the jury rendered a verdict of guilty. The district court sentenced Espinosa to 20 years and a $200,000 fine, plus a 5–year sentence enhancement. Espinosa timely appealed.

## DISCUSSION

### I. *The Suppression Issues*

#### A. *The June 25 Encounter and Arrest*

Espinosa first challenges the denial of the motion to suppress the money, keys, wallet, and other papers seized during the June 25 encounter with Officers Keenan and Baello. On appeal, Espinosa does not contest the district court's finding that he consented to the search of his car. He argues only that any consent was tainted by an illegal detention and arrest. *See Florida v. Royer*, 460 U.S. 491, 501, 103 S.Ct. 1319, 1326, 75 L.Ed.2d 229 (1983).

#### 1. *The Initial Detention*

Espinosa contends that the initial detention was illegal under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), because Officers Keenan and Baello did not have an articulable, reasonable suspicion that the defendant had committed or was about to commit a crime. *See Royer*, 460 U.S. at 498–99, 103 S.Ct. at 1324–25; *United States v. Sokolow*, 808 F.2d 1366, 1369 (9th Cir.1987). We review the ultimate conclusion that a reasonable suspicion existed de novo and underlying factual determinations for clear error. *United States v. Kerr*, 817 F.2d 1384, 1386 (9th Cir.1987); *Sokolow*, 808 F.2d at 1369 & n. 3; *United States v. Erwin*, 803 F.2d 1505, 1509–10 (9th Cir.1986).

■ The fourth amendment does not place restrictions on police officers who approach persons on the street and ask them questions, if the person is willing to listen and answer. *Royer*, 460 U.S. at 497–98, 103 S.Ct. at 1323–24; *Martinelli v. City of Beaumont*, 820 F.2d 1491, 1494 & n. 2 (9th Cir.1987); *Sokolow*, 808 F.2d at 1369. After the officers requested identification, however, they informed Espinosa that he was being detained to determine whether he was involved in a narcotics transaction.

Thus, we must determine whether the information the officers had at that time was sufficient to constitute a reasonable, articulable suspicion that criminal activity was afoot. We may not consider any information that the officers obtained after the initial detention. *Sokolow*, 808 F.2d at 1370.

Espinosa relies exclusively on *People v. Bower*, 24 Cal.3d 638, 156 Cal.Rptr. 856, 597 P.2d 115 (1979), and *Sokolow*, 808 F.2d 1366. In *Bower*, the California Supreme Court held that police officers did not have a reasonable, articulable suspicion when they had only observed a white man talking to several black persons at night in a black residential area known to be a high crime area. *Bower*, 24 Cal.3d at 645, 156 Cal. Rptr. at 860, 597 P.2d at 119–20. The *Bower* Court declined to rely on evidence of the suspect's arguably furtive and evasive actions, because the officers themselves stated that they did not rely on such factors. *Id.* at 647, 156 Cal.Rptr. at 861, 597 P.2d at 120. In *Sokolow*, the Ninth Circuit held that the fact that a suspect wore a black jump suit and gold jewelry, had no checked luggage, and paid for an airline ticket to Miami with cash did not justify a *Terry* stop. *Sokolow*, 808 F.2d at 1370–71.

■ The circumstances in Espinosa's case are clearly distinguishable from those in *Bower* and *Sokolow*. Officers Keenan and Baello observed the defendant with a handful of money, apparently about to give it to the second man in an area known for drug trafficking. *Cf. Bower*, 24 Cal.3d at 647, 156 Cal.Rptr. at 862, 597 P.2d at 121 (noting that in that case "[n]othing was being concealed, disposed of, exchanged, or even carried"). When the defendant spotted the officers, he slipped the money into his pocket and walked away at a fast pace; the second man ran away. *Cf. Sokolow*, 808 F.2d at 1371 (noting that appearing nervous or taking evasive action tends to raise a suspicion that criminal activity is going on); *Erwin*, 803 F.2d at 1511. Although there is no "litmus test" for determining when a reasonable suspicion exists, *id.* at 1510, the particular circumstances of

this case, taken together, lead us to conclude that an experienced police officer would have a reasonable, articulable suspicion that the defendant had committed or was about to commit a crime. Put another way, we do not believe that investigative detentions based on these facts would subject "a very large category of presumably innocent" persons to "virtually random seizures." *See Reid v. Georgia*, 448 U.S. 438, 441, 100 S.Ct. 2752, 2754, 65 L.Ed.2d 890 (1980) (per curiam); *Sokolow*, 808 F.2d at 1371.

### 2. The Arrest

Espinosa also argues that the consent was tainted by an illegal arrest. He charges that, in view of the discrepancies between the birth date he gave and the one on the traffic warrant for "Henry Rodriguez" and between his height and weight and those for "Henry Rodriguez" on the warrant, the record shows that the arrest was nothing but a policeman's ploy to search his person and car for narcotics. "An arrest may not be used as a pretext to search for evidence." *United States v. Smith*, 802 F.2d 1119, 1124 (9th Cir.1986).

The two Ninth Circuit cases on which Espinosa relies involve far more extreme circumstances than those in the present case. In *Taglavore v. United States*, 291 F.2d 262 (9th Cir.1961), we concluded that the police had engaged in a "deliberate, pre-planned" scheme to evade the requirements of the fourth amendment, because officers waited one day to issue and serve a traffic warrant in order to arrest the suspect at a time when he might have narcotics in his possession. *Id.* at 265–67. We expressly distinguished the case in which a police officer is "confronted with a sudden and unexpected situation [and] made a miscalculation in acting." *Id.* at 267. In *United States v. Prim*, 698 F.2d 972 (9th Cir. 1983), we held invalid an after-the-fact attempt to use an outstanding nonsupport warrant to justify a search for narcotics

that lacked probable cause. *Id.* at 974–75. The officers testified at the suppression hearing that they did not rely on that warrant when making the search. *Id.* at 974.

■ In Espinosa's case, the officers stated that they acted under a belief that the defendant was wanted on an outstanding traffic warrant. Thus, unlike *Prim*, the officers did not use the warrant as a pretextual basis to arrest Espinosa. At the time the officers first indicated that the defendant was being placed under arrest, Espinosa had given his birth date only orally. Despite the protestations that he was not the person wanted under the warrant, it was not unreasonable for the officers to believe that he was. *See Hill v. California*, 401 U.S. 797, 803, 91 S.Ct. 1106, 1110, 28 L.Ed.2d 484 (1971) (noting that "aliases and false identifications are not uncommon"). To be sure, the discrepancy between the height and weight figures should have given the officers pause to question whether they had the right person, and the record indicates that it did. *See supra* note 1; *cf. Hill*, 401 U.S. at 802–04, 91 S.Ct. at 1110–11 (holding that officers had a "reasonable, good-faith belief that the arrestee" was the person sought in a robbery when the arrestee fit the physical description of the robber). On balance, however, we believe that the district court's determination that the officers did not arrest the defendant under the pretext of the traffic warrant in order to search for narcotics is not clearly erroneous.[2] *See McCusker v. Cupp*, 541 F.2d 850, 851 (9th Cir.1976) (per curiam); *Williams v. United States*, 418 F.2d 159, 161 (9th Cir.1969), *aff'd*, 401 U.S. 646, 91 S.Ct. 1148, 28 L.Ed.2d 388 (1971); *see also Maryland v. Garrison*, — U.S. ——, 107 S.Ct. 1013, 1018–19, 94 L.Ed.2d 72 (1987) (noting "the need to allow some latitude for honest mistakes that are made by officers in the dangerous and difficult process of making arrests"); *Hill*, 401 U.S. at 804, 91 S.Ct. at 1111 (stating that "the officers' mistake was understandable and

---

**2.** In addition, after the officers initially told the defendant he was under arrest, they obtained his driver's license, which indicated a birth date and address different from the ones the defendant had given orally. This fact tended to con-

firm the officers' belief that the defendant was the individual named in the warrants. By that time, it was apparent that the defendant either was lying about his birth date and address or had a false ID.

the arrest a reasonable response to the situation facing them at the time").

### B. The August 28 Search Warrant

#### 1. Probable Cause to Issue the Warrant

Espinosa argues that the evidence obtained in the August 28 search should have been suppressed because the search warrant was issued without probable cause. We accord great deference to a magistrate's determination of probable cause to issue a search warrant and will reverse only if that determination is clearly erroneous. *United States v. McQuisten*, 795 F.2d 858, 861 (9th Cir.1986). Our task is to determine whether, under the totality of the circumstances, the supporting affidavit furnished a substantial basis for the magistrate to make a " 'practical, common-sense decision' " that there was a " 'fair probability' " that contraband or evidence of a crime would be found at the specified locations. *New York v. P.J. Video, Inc.*, 475 U.S. 868, 106 S.Ct. 1610, 1615–16, 89 L.Ed.2d 871 (1986) (quoting *Illinois v. Gates*, 462 U.S. 213, 238–39, 103 S.Ct. 2317, 2332–33, 76 L.Ed.2d 527 (1983)); *United States v. Kinstler*, 812 F.2d 522, 525 (9th Cir.1987); *McQuisten*, 795 F.2d at 861–62.

Espinosa focuses almost exclusively on the affidavit's report that a confidential tipster stated only a "belief" that the defendant was engaged in narcotics trafficking. The government emphasizes the subsequent surveillance incidents of brief meetings in shopping centers, parking lots, restaurants, and gas stations with individuals with whom the defendant exchanged plastic and paper bags on two occasions; the defendant's residence in an apartment rented by a person under a false name who was awaiting trial on a cocaine charge; his possession and use of a key to another apartment rented by a female, which he visited briefly to pick up and drop off small packages immediately before meeting with someone to exchange packages in a parking lot; his use of cars not registered or traceable to him, one of which was reg-

istered to an individual who had been arrested on a drug charge in 1982; and the absence of any visible means of support. Detective Altieri, an experienced narcotics detective, formed the opinion that the defendant's pattern of activity showed that he was engaged in narcotics transactions and used the Sepulveda apartment as a "stash pad" for narcotics or cash. *See Brown v. Texas*, 443 U.S. 47, 52 n. 2, 99 S.Ct. 2637, 2641 n. 2, 61 L.Ed.2d 357 (1979) ("[A] trained, experienced police officer ... is able to perceive and articulate meaning in given conduct which would be wholly innocent to the untrained observer."); *United States v. Fouche*, 776 F.2d 1398, 1403 (9th Cir.1985).

▮ Viewing the totality of the circumstances, we conclude that the magistrate had a substantial basis for concluding that probable cause existed to issue the search warrant. *See Kinstler*, 812 F.2d at 525 (noting significance of pattern of ostensibly innocent activity); *McQuisten*, 795 F.2d at 862.[3]

#### 2. The "John Doe" Issue

Espinosa next argues that the district court should have suppressed the evidence seized on August 28 because the "John Doe" warrant did not meet the specificity requirement of the fourth amendment. We review de novo the district court's determination that the warrant was sufficiently particular. *See United States v. Spilotro*, 800 F.2d 959, 963 (9th Cir.1986).

The fourth amendment provides that a search warrant must "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV; *see United States v. Cardwell*, 680 F.2d 75, 77 (9th Cir.1982). Evidence seized pursuant to illegal general warrants must be suppressed. *See Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319, 325–26, 99 S.Ct. 2319, 2323–24, 60 L.Ed.2d 920 (1979). Courts have invalidated warrants that purported to authorize searches of undescribed, unidentified persons at a

---

**3.** We need not reach the question whether the search was justified under the "good faith" ex- ception of *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).

particular location. *See People v. Tenney,* 25 Cal. App.3d 16, 101 Cal.Rptr. 419 (1972); *People v. Staes,* 92 Ill.App.2d 156, 235 N.E.2d 882 (1968). Other courts have held "John Doe" warrants invalid when the officers learned the identity of the person in sufficient time to include the name in the warrant before making the search or arrest. *See United States v. Doe,* 703 F.2d 745, 746–50 (3d Cir.1983); *United States v. Jarvis,* 560 F.2d 494, 496–97 (2d Cir.1977), *cert. denied,* 435 U.S. 934, 98 S.Ct. 1511, 55 L.Ed.2d 532 (1978).

Reaching the opposite result is *United States v. Ferrone,* 438 F.2d 381 (3d Cir.), *cert denied,* 402 U.S. 1008, 91 S.Ct. 2188, 29 L.Ed.2d 430 (1971). There, the Third Circuit upheld a warrant that authorized a search of "John Doe, a white male with black wavy hair and stocky build observed using the telephone in Apartment 4–C, 1806 Patricia Lane, East McKeesport, Pennsylvania." *Id.* at 389. The court held that the physical description, coupled with an address where he might be found, satisfied the specificity requirement of the fourth amendment. *Id.; see also* 2 W. LaFave, *Search and Seizure* § 4.5, at 89–90 & n. 90 (1978).

The circumstances in Espinosa's case are stronger than those in *Ferrone.* The search warrant for Espinosa provided a more detailed physical description of the individual to be searched than in *Ferrone.* Although Espinosa's warrant itself did not specify his residence or other place where he might be found, the accompanying, incorporated affidavit specified his Park Plaza residence and two vehicles (with license plate numbers) where he might be found. The information in the affidavit is properly considered because the record makes clear that "(1) the affidavit accompanie[d] the warrant, and (2) the warrant use[d] suitable words of reference which incorporate[d] the affidavit therein." *United States v. Hillyard,* 677 F.2d 1336, 1340 (9th Cir.1982); *accord Spilotro,* 800 F.2d at 967; *United States v. Hayes,* 794 F.2d 1348, 1354 (9th Cir.1986), *cert. denied,* — U.S. ——, 107 S.Ct. 1289, 94 L.Ed.2d 146 (1987).

In addition, unlike in *Doe* and *Jarvis,* Detective Altieri and his partner did not know the name of the defendant prior to the search. Indeed, Espinosa had taken great pains to conceal his identity from the authorities and the public: he occupied a Park Plaza room rented by a woman who used an alias; used a Sepulveda apartment rented by another woman; used cars not registered or traceable to him; carried a driver's license in the name of "Henry Rodriguez"; and had other identification in the name of "Roberto Cordero." Under these circumstances, the warrant did not violate the specificity requirement of the fourth amendment. *Cf. United States v. Gomez-Soto,* 723 F.2d 649, 654 (9th Cir.) (stating that a general description of the items to be searched may be acceptable "if a more precise description is not possible"), *cert. denied,* 466 U.S. 977, 104 S.Ct. 2360, 80 L.Ed.2d 831 (1984); *Spilotro,* 800 F.2d at 963 (stating that one relevant factor in appraising the specificity of warrants is whether the government could have described the items more particularly "in light of the information available to it at the time the warrant was issued"). The warrant and the accompanying, incorporated affidavit left the officers with no discretion as to whom to search. *See Hayes,* 794 F.2d at 1354; *Hillyard,* 677 F.2d at 1339.

## II. *The Admission of Detective Altieri's Testimony*

Espinosa challenges the admission of certain testimony by Detective Altieri (1) that the defendant was using the Sepulveda apartment as a "stash pad" for money and narcotics, (2) that the "pay and owe" ledgers found in the Sepulveda apartment contained the names of the defendant's cocaine buyers, and (3) that an exchange of packages on August 16 was an exchange of narcotics for money. He argues that this testimony was not a proper subject of expert testimony under Fed.R.Evid. 702 because the subject matter was not beyond the understanding of the average layman, and that its admission was highly prejudicial to his defense. The decision to admit expert testimony is committed to the discretion of the district court and will not be disturbed unless manifestly erroneous.

*See United States v. Andersson,* 813 F.2d 1450, 1458 (9th Cir.1987); *United States v. McCollum,* 802 F.2d 344, 345–46 (9th Cir. 1986).

Rule 702 of the Federal Rules of Evidence provides that "a witness qualified as an expert by knowledge, skill, experience, training, or education" may offer expert testimony "[i]f scientific, technical, or other specialized knowledge *will assist the trier of fact to understand the evidence* or to determine a fact in issue." Fed.R.Evid. 702 (emphasis added). Law enforcement officers with sufficient qualifications may testify concerning the methods and techniques employed in an area of criminal activity. *Andersson,* 813 F.2d at 1458; *McCollum,* 802 F.2d at 346; *United States v. Rogers,* 769 F.2d 1418, 1425 (9th Cir. 1985). We therefore reject Espinosa's assertion that Detective Altieri's opinion was not based on a particular science or specialized field of training. The record amply establishes that Detective Altieri was qualified to testify as an expert on the modus operandi of narcotics traffickers. *See* 3 Reporter's Transcript of Proceedings ("R.T.") at 88–97; *Andersson,* 813 F.2d at 1458.

Rule 704 provides that opinion testimony may be given even if it encompasses an ultimate issue to be resolved by the trier of fact, unless the testimony concerns the defendant's mental state or condition. Fed.R.Evid. 704. A witness, however, may not give a direct opinion on the defendant's guilt or innocence. *United States v. Fleishman,* 684 F.2d 1329, 1335–36 (9th Cir.), *cert. denied,* 459 U.S. 1044, 103 S.Ct. 464, 74 L.Ed.2d 614 (1982).

In a series of cases, we have upheld admission of a law enforcement officer's expert testimony that the defendant's activities indicated that he acted in accordance with usual criminal modus operandi. In *Fleishman,* we upheld admission of an officer's testimony that the defendant's actions showed that he was acting as a lookout in a drug trafficking conspiracy case. *Fleishman,* 684 F.2d at 1335–36. In *United States v. Maher,* 645 F.2d 780 (9th Cir. 1981) (per curiam), we upheld admission of an agent's testimony that the defendant's activities were similar to the modus operandi of persons conducting counter-surveillance while transporting drugs. *Id.* at 783–84. And in *United States v. Stewart,* 770 F.2d 825 (9th Cir.1985), *cert. denied,* 474 U.S. 1103, 106 S.Ct. 888, 88 L.Ed.2d 922 (1986), we upheld admission of a DEA agent's opinion testimony that (1) the defendant's driving behavior indicated that he was attempting to avoid surveillance and (2) that he probably was delivering drugs to customers on another occasion. *Id.* at 831. We also cited with approval *United States v. Carson,* 702 F.2d 351 (2d Cir.), *cert. denied,* 462 U.S. 1108, 103 S.Ct. 2456, 77 L.Ed.2d 1335 (1983), in which the Second Circuit upheld admission of expert testimony that a transaction on a street corner appeared to be a drug sale. *Stewart,* 770 F.2d at 831; *see also United States v. Masson,* 582 F.2d 961, 964 (5th Cir.1978) (admission of expert testimony to determine if tape-recorded conversations contained evidence of bookmaking operations).

In these cases, we have rejected the argument that expert testimony is inadmissible simply because it is founded solely on observations of innocent conduct. For that very reason, the expert testimony may be valuable to the jury. *Fleishman,* 684 F.2d at 1336. Of course, the extent to which expert testimony may be of assistance to the jury in understanding the evidence is a matter of degree and will vary according to the circumstances of each case. *Compare United States v. Arenal,* 768 F.2d 263, 269–70 (8th Cir.1985) (2–1 decision) (jury was competent to draw its own conclusion that cocaine with same cutting ingredient came from common source) *with United States v. Milton,* 555 F.2d 1198, 1203–05 (5th Cir.1977) (expert's interpretation of transcripts of defendants' conversations did not invade province of jury). A trial court should not routinely admit opinions such as those admitted in the present case, but should carefully weigh the testimony's probative value against its possible prejudicial effect. *McCollum,* 802 F.2d at 346; *United States v. Young,* 745 F.2d 733, 765–66 (2d Cir.1984) (Newman, J., concurring),

*cert. denied,* 470 U.S. 1084, 105 S.Ct. 1842, 85 L.Ed.2d 142 (1985); Fed.R.Evid. 403. This weighing is particularly important with the expert testimony of a law enforcement officer, which often carries an " 'aura of special reliability and trustworthiness.' " *Young,* 745 F.2d at 766 (Newman, J., concurring) (quoting *United States v. Fosher,* 590 F.2d 381, 383 (1st Cir.1979), and *United States v. Amaral,* 488 F.2d 1148, 1152 (9th Cir.1973)); *see Arenal,* 768 F.2d at 270. In this case, the trial court properly instructed the jury on the weight it might ascribe to opinion testimony given at trial.[4] In light of our prior holdings, we are unable to conclude that the trial court's admission of the expert testimony was manifestly erroneous. *See Stewart,* 770 F.2d at 831.

### III. *The Jury Instructions*

Espinosa challenges the district court's refusal to give the jury (1) his version of a constructive possession instruction and (2) an instruction for the lesser included offense of simple possession. Under Rule 30 of the Federal Rules of Criminal Procedure, "[n]o party may assign as error any portion of the charge or omission therefrom unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which that party objects and the grounds of the objection." In the absence of a formal, specific objection on the record, we have nonetheless found compliance when counsel requested an instruction that was rejected and the record clearly established that the court was fully aware that the party did not agree with the court's instruction. *Martinelli,* 820 F.2d at 1493–94; *see Brown v. Avemco Investment Corp.,* 603 F.2d 1367, 1371–75 (9th Cir.1979) (discussing compliance with procedure for objecting to instructions in civil action); Fed.R. Crim.P. 30 advisory committee note (noting that procedure for making objections is same in civil and criminal actions). However, failure to lodge a specific objection on the record after the court charges the jury is clearly a "risky business." 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2553, at 639–41 (2d ed. 1982); *see also* 2 *id.* § 484, at 702; *Lifshitz v. Walter Drake & Sons,* 806 F.2d 1426, 1430–31 (9th Cir.1986) (civil context); *Gilchrist v. Jim Slemons Imports, Inc.,* 803 F.2d 1488, 1493 (9th Cir.1986); *Bertrand v. Southern Pac. Co.,* 282 F.2d 569, 571–72 (9th Cir.1960), *cert. denied,* 365 U.S. 816, 81 S.Ct. 697, 5 L.Ed.2d 694 (1961). Absent a proper objection, we would review the instructions only for plain error. *United States v. Appoloney,* 761 F.2d 520, 522 (9th Cir.), *cert. denied,* 474 U.S. 949, 106 S.Ct. 348, 88 L.Ed.2d 296 (1985).

This case both illustrates the difficulties of determining whether a party has made the court fully aware of a purported objection to an instruction under *Brown* and *Martinelli,* and the perils of failing to lodge a proper objection. Although Espinosa's counsel requested instructions on constructive and simple possession, he neither argued strenuously for them in conference nor lodged a formal objection in court.[5] However, we need not decide

---

4. The trial judge instructed the jury:

> You should consider each expert opinion received in evidence in this case and give it such weight as you may think it deserves. If you should decide that the opinion of an expert witness is not based upon sufficient education and experience, or if you should conclude that the reasons given in support of the opinion are not sound, or that the opinion is outweighed by other evidence, you may disregard the opinion entirely.

R.T. at 76–77 (Nov. 20, 1985, unnumbered).

5. In conference, the following colloquy took place concerning Espinosa's proposed instruction No. 12 on constructive possession:

> THE COURT: Now, this is an amplification of other instructions, isn't it, Mr. Vodnoy?

MR. VODNOY [Espinosa's counsel]: True, your Honor.

> THE COURT: Dan, take a look at this, and go back to the Government's instruction on constructive possession. This is No. 12.

> LAW CLERK MANSUETO: Okay.

> THE COURT: And Defendant's 12.

> It seems to me that there is sufficient clarity in the Government's instruction. If it appears that these two might help the jury further in their deliberations—

> LAW CLERK MANSUETO: Okay. That's for 11 and 12 that you want me to do that?

> THE COURT: Right. Right. Okay. Now we have that.

whether the defendant complied with Rule 30 in this case. Even assuming such compliance, his challenges fail.

We review the jury instructions to "determine whether, viewing the instructions as a whole, the court gave adequate instructions on each element of the case to ensure that the jury fully understood the issues," and to determine "whether the instruction is misleading or states the law incorrectly to the prejudice of the objecting party." *Kisor v. Johns-Manville Corp.,* 783 F.2d 1337, 1340 (9th Cir.1986). The constructive possession instruction given to the jury [6] is a correct statement of the law. *See United States v. Disla,* 805 F.2d 1340, 1350 (9th Cir.1986). The defendant's proffered instruction merely amplified the rule and tended to emphasize the defendant's view of the case. Courts are not required to give such instructions. *See United States v. Agee,* 597 F.2d 350, 360–61 (3d Cir.) (en banc), *cert. denied,* 442 U.S. 944, 99 S.Ct. 2889, 61 L.Ed.2d 315 (1979); *United States v. Rojas,* 537 F.2d 216, 219–20 (5th Cir.1976), *cert. denied,* 429 U.S. 1061, 97 S.Ct. 785, 50 L.Ed.2d 777 (1977). In view of the broad latitude accorded trial judges in tailoring the instructions to the circumstances of a case, *see United States v. Burgess,* 791 F.2d 676, 680 (9th Cir.1986), we conclude that the constructive possession instruction given to the jury was proper.

---

4 R.T. at 226–27. At trial, the court gave the government's instruction on constructive possession. Espinosa's counsel did not object.

The conference colloquy on the simple possession charge is similarly ambiguous as to the existence or strength of the defense counsel's disagreement with the proposed instruction:

THE COURT: ... We've got the lesser included [of]fense instruction.

MR. VODNOY: Yes, your Honor.

MR. WALSH [U.S. attorney]: I object to the lesser included offense instruction on the fact that we're talking about 70 pounds of cocaine. It's preposterous to suggest that that would support a mere possession as a misdemeanor.

THE COURT: What?

Okay.

THE COURT: What's the lesser included offense?

MR. VODNOY: Straight possession. That means it's possible that it's the lesser included offense, obviously, I think.

I don't think I have to make a determination of going for broke or not guilty. I think I can opt for a middle ground.

. . . . .

THE COURT: The question is whether you are entitled to it based on the evidence that we have in the case at the present time.

MR. VODNOY: It may be that the jury doesn't think he owns all of it. He may think he owns a small portion of it. Now, clearly, it's different places. It's in different locations in the apartment. I think the jury should have the option, if they desire, to find him guilty of straight possession on the basis that he only owned a small portion, that perhaps most of it was owned by somebody else.

THE COURT: Well, what's the evidence to that effect?

MR. VODNOY: Just inference.

THE COURT: The real evidence of ownership?

MR. VODNOY: Well, I'm suggesting, obviously, that there is no evidence of ownership other than keys to the apartment, the utility bills, and all of the other things that are the circumstantial evidence.

THE COURT: I don't think this is a lesser included offense-type situation. It's worth asking.

MR. VODNOY: There's no harm in asking, as they say, right?

THE COURT: Right.

But I'm inclined not to give that.

MR. VODNOY: All right, your Honor.

4 R.T. at 218–220. After the court charged the jury and omitted the simple possession instruction, Espinosa's counsel stated that he had "[n]o further objections." R.T. at 83 (Nov. 20, 1985, unnumbered).

**6.** The court instructed the jury:

One further instruction, ladies and gentlemen. The law recognizes two kinds of possession, actual possession and constructive possession. A person who knowingly has direct physical control over a thing at a given time is then in actual possession of it. A person who although not in actual possession knowingly has the power and intention at a given time to exercise dominion or control over a thing either directly or through another person or persons, is then in constructive possession of it.

The law recognizes also that possession may be sole or joint. If one person alone has actual or constructive possession of a thing, possession is sole. If two or more persons share actual or constructive possession of a thing, possession is joint.

You may find that the element of possession, as that term is used in these instructions, is present if you find beyond a reasonable doubt that the defendant had actual or constructive possession either alone or jointly with others.

R.T. at 84–85 (Nov. 20, 1985, unnumbered).

■ We similarly find no error in the district court's decision to omit an instruction on simple possession, a lesser included offense of possession with intent to distribute. *See United States v. Burns,* 624 F.2d 95, 104 (10th Cir.), *cert. denied,* 449 U.S. 954, 101 S.Ct. 361, 66 L.Ed.2d 219 (1980). A trial court should give an instruction on a lesser included offense if the jury could rationally convict the defendant on the lesser included charge and acquit him of the greater. *See Keeble v. United States,* 412 U.S. 205, 208, 93 S.Ct. 1993, 1995, 36 L.Ed.2d 844 (1973); *United States v. Jackson,* 726 F.2d 1466, 1470 (9th Cir.1984) (per curiam); 2 C. Wright, *supra,* § 498, at 795.

■ In this case, our review of the record confirms the district court's conclusion that a simple possession instruction was not required. *See United States v. Johnson,* 734 F.2d 503, 505–06 (10th Cir. 1984) (per curiam); *Fitzgerald v. United States,* 719 F.2d 1069, 1071–72 (10th Cir. 1983). In particular, we note the large quantity of cocaine (valued at $18–20 million) found in the Sepulveda apartment, for which Espinosa had two sets of keys to the double locks and which contained little furniture and clothing, no food in the refrigerator, and no kitchen utensils, telephone, or television. In view of the evidence suggesting that two other unlocatable persons who paid the rent may also have had access to the apartment, the jury was entitled to conclude that Espinosa did not constructively possess the cocaine in the apartment. However, assuming that there was constructive possession, the jury could not rationally conclude that there was no intent to distribute. *See United States v. Silla,* 555 F.2d 703, 706–07 (9th Cir.1977). The record is devoid of evidence that would suggest that Espinosa might have owned only a portion of the 69 pounds of cocaine found there. *See United States v. Payne,* 805 F.2d 1062, 1067 (D.C.Cir.1986); *United States v. Thornton,* 746 F.2d 39, 47–48 (D.C.Cir.1984); *United States v. King,* 567 F.2d 785, 790–91 (8th Cir.1977), *cert. denied,* 435 U.S. 945, 98 S.Ct. 1527, 55 L.Ed.2d 542 (1978); *United States v. Rogers,* 504 F.2d 1079, 1084 (5th Cir.1974), *cert. denied,* 422 U.S. 1042, 95 S.Ct. 2655, 45 L.Ed.2d 693 (1975); *cf. United States v. Garcia-Duarte,* 718 F.2d 42, 47–48 (2d Cir. 1983) (holding that simple possession instruction was required when evidence showed that defendant possessed only .23 grams of cocaine). Therefore, on the evidence presented, a rational jury could not have convicted Espinosa of simple possession and acquitted him of possession with intent to distribute.

## IV. *The Reference to Espinosa's Failure to Testify*

Espinosa also argues that the prosecution impermissibly commented on Espinosa's failure to testify in violation of his fifth amendment privilege. *See Griffin v. California,* 380 U.S. 609, 615, 85 S.Ct. 1229, 1233, 14 L.Ed.2d 106 (1965); *Lincoln v. Sunn,* 807 F.2d 805, 810–11 (9th Cir. 1987). In its closing argument, the prosecution stated in reference to the money found in the trunk on June 25:

> Now, when the police come up with $146,000, at this point, does Mr. Espinosa say anything about that money? Did you hear any testimony about anything that was said about that money? Nothing.
>
> You know what you did [hear], you heard the defense ask the DEA agent—

5 R.T. at 8. Judge Waters interrupted, brought counsel to the sidebar, and told counsel not to pursue that line of argument. *Id.* at 8–12. He then instructed the jury:

> Ladies and gentlemen, you will recall when I read the instructions of law to you, I stated twice and possibly three times that the defendant does have a right to exercise his privilege to not testify, and that you were to draw no inferences from that, nor is he required to produce any testimony in evidence, and I instruct you to disregard the last arguments of counsel here, and keep in mind the fact that the defendant is not so obligated.

*Id.* at 12. The government contends that the error, if any, was harmless.

We have previously addressed challenges to comments on a defendant's failure to testify primarily under the harmless error doctrine. *See, e.g., Lincoln,* 807 F.2d at 811; *United States v. Armstrong,* 654 F.2d 1328, 1336 (9th Cir.1981), *cert. denied,* 454 U.S. 1157, 102 S.Ct. 1032, 71 L.Ed.2d 315 (1982); *see Anderson v. Nelson,* 390 U.S. 523, 523–24, 88 S.Ct. 1133, 1135, 20 L.Ed.2d 81 (1968) (per curiam); *see also United States v. Kennedy,* 714 F.2d 968, 976–77 (9th Cir.1983) (applying plain error doctrine when defendant did not object to comment), *cert. denied,* 465 U.S. 1034, 104 S.Ct. 1305, 79 L.Ed.2d 704 (1984). In *Kennedy,* we noted that reversal is mandated

> "where such comment is extensive, where an inference of guilt from silence is stressed to the jury as a basis of conviction, and where there is evidence that could have supported acquittal." *Anderson v. Nelson,* 390 U.S. 523, 88 S.Ct. 1133, 20 L.Ed.2d 81 (1968) (per curiam). Nevertheless, where the prosecutorial comment was a single isolated statement, where it did not stress any reference to guilt, and where it was followed by curative instructions, we have been reluctant to reverse.

*Kennedy,* 714 F.2d at 976.

In *Greer v. Miller,* —— U.S. ——, 107 S.Ct. 3102, 97 L.Ed.2d 618 (1987), the Supreme Court addressed a similar issue—a prosecutor's question at trial concerning the defendant's post-arrest silence. The Court held that a single question addressed to the defendant concerning his post-arrest silence did not constitute error under *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), because the trial court immediately sustained an objection to that question, the court advised the jury to disregard it, and the defense counsel did not request more specific curative instructions. *Greer,* 107 S.Ct. at 3108 & n. 5. The Court distinguished *Greer* from cases in which it found a *Doyle* violation when the trial court *permitted* prosecutorial comment or

inquiry regarding post-arrest silence. The Court concluded in *Greer* that, because the lower court sustained the objection and instructed the jury to disregard the question, "[t]he fact of Miller's postarrest silence was not submitted to the jury as evidence from which it was allowed to draw any permissible inference, and thus no *Doyle* violation occurred." *Id.* at 3108. Accordingly, it did not reach the harmless error question. *See id.* at 3108 n. 6.[7]

■■■ In the instant case, we perceive no reversible error whether the prosecution's statement constitutes a *Griffin* violation that triggers a harmless error analysis, or constitutes no *Griffin* violation at all. The prosecution made only one short statement, which concerned a peripheral issue about the source of the money, not the possession of the cocaine. Judge Waters gave an immediate and proper instruction to the jury to disregard the prosecutor's comment. Applying our previous cases, we would find that any error was harmless in these circumstances. *See Kennedy,* 714 F.2d at 976. Alternatively, because the trial judge immediately instructed the jury to disregard the comment, "the prosecutor ... was not 'allowed to undertake impeachment on,' or 'permit[ted] ... to call attention to,'" Espinosa's refusal to testify. *Greer,* 107 S.Ct. at 3108 (quoting *Doyle,* 426 U.S. at 619 & n. 10, 96 S.Ct. at 2245 n. 10).

## V. *Sentence Enhancement*

Finally, Espinosa argues that the 5–year sentence enhancement was not authorized under 21 U.S.C. §§ 841(b)(1)(A), 851(a)(2) (1982 & Supp. III 1985). Section 851(a)(2) provides:

> An information may not be filed under this section if the increased punishment which may be imposed is imprisonment for a term in excess of three years unless the person either waived or was afforded prosecution by indictment for the offense

---

7. Three Justices argued in dissent that the majority "confus[ed] the question whether a *Doyle* violation occurred with the question whether that violation was harmless beyond a reasonable doubt." *Greer,* 107 S.Ct. at 3111 (Brennan, J., dissenting). In the dissenters' view, the mere fact that the prosecutor posed the impermissible question constituted the *Doyle* violation, which would then trigger an inquiry into whether the error was harmless. *Id.* at 3111–12.

for which such increased punishment may be imposed.

Espinosa argues that the requirement of "prosecution by indictment" refers to the prior conviction; the government contends that it refers to the current offense. The parties agree that Espinosa's prior conviction for cocaine transportation or sale under California law did not involve a waiver of or prosecution by indictment; a felony complaint and a criminal information were filed in state superior court.

 Although the statutory language is arguably susceptible to either reading, we believe that the government's interpretation is correct for several reasons. First, although one may not be punished twice for the same crime, punishment for a second crime may be enhanced by reason of a second conviction. *Cf.* H.R. No. 91–1444, 91st Cong., 2d Sess., *reprinted in* 1970 U.S.Code Cong. & Admin.News 4566, 4618 (referring to a different section's "procedure for establishing prior convictions so as to authorize imposition of an increased penalty upon a subsequent conviction"). Hence, a common-sense reading of the phrase "offense for which such increased punishment may be imposed" is the current, or latest, offense. Second, the two other usages of the term "offense" in § 851 refer to the current offense. *See* 21 U.S.C. § 851(a)(1), (e) (1982). Section 851 consistently uses the terms "prior conviction[s]" and "previous convictions" to denote the prior conviction. *See* 21 U.S.C. § 851(a)(1), (b), (c)(1)–(2), (d)(1), (e) (1982). Had Congress intended Espinosa's interpretation, it seems that the phrase simply would have read "prosecution by indictment in the prior conviction." Finally, the government points out the anomalous situation that would result from Espinosa's interpretation. Despite Congress's evident attempt in 1984 to broaden the scope of § 841(b) prior convictions to include state and foreign convictions (in addition to federal convictions), Espinosa's interpretation would exclude from the statute's ambit prior convictions in those states or foreign countries that happen to use a felony complaint system rather than a grand jury indictment system. We conclude that § 851 authorized the sentence enhancement.

## CONCLUSION

For the reasons given above, the judgment of the district court is AFFIRMED.