952 F.2d 408
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Melvin M. COOK, Defendant-Appellant.
 No. 91-30019.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 6, 1991.*
Decided Dec. 17, 1991.
 
 Before TANG, O'SCANNLAIN and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Melvin Cook, Jr., appeals his conviction following a jury trial for conspiracy and possession with intent to distribute cocaine. 21 U.S.C. §§ 841(a)(1), 846. Cook contends that the district court erred in denying his motion to suppress money and a gun seized from a safe during a search of his parents' home. Cook also objects to the district court's admission of expert testimony by a Drug Enforcement Administration officer. We affirm.
 
 DISCUSSION
 A. Probable Cause
 
 3
 Cook argues that the Welch affidavit, which provided the basis for the warrant, failed to articulate probable cause for the search of his parents' residence, referred to in the affidavit as 14525 S.W. Glenbrook Road. In so arguing, Cook isolates a few paragraphs in the affidavit discussing his use of the residence to receive mail and insists that the arrival of a few letters bearing his name alone does not amount to probable cause.[1]
 
 
 4
 We may not, however, approach this question with blinders on. In order to determine whether probable cause exists, we must look at the "totality of the circumstances" and evaluate whether they provide a "substantial basis" for the magistrate's decision. United States v. Hernandez-Escarsega, 886 F.2d 1560, 1563 (9th Cir.1989) (quotations omitted), cert. denied, 110 S.Ct. 3237 (1990); United States v. Espinosa, 827 F.2d 604, 610 (9th Cir.1987), cert. denied, 485 U.S. 968 (1988). In this particular case, we inquire whether " 'given all the circumstances set forth in the affidavit before [the magistrate], ... there is a fair probability that contraband or evidence of crime [would] be found in' " Cook's parents' residence. Hernandez-Escarsega, 886 F.2d at 1564 (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)).
 
 
 5
 When considered in this light, the Welch affidavit amply demonstrates probable cause. The affidavit paints a picture of Cook's high-level involvement in a large drug distribution network. Based on his own extensive experience investigating drug offenses, Officer Welch also expressed in the affidavit his opinion that drug dealers frequently use aliases and alternative addresses to mask the extensive financial dealings necessary to launder their drug proceeds and to avoid creating a paper trail. According to Welch, dealers frequently store money and records in safes, as well as other compartments, at secondary addresses. See Espinosa, 827 F.2d at 610 (in establishing probable cause, a " 'trained, experienced police officer ... is able to perceive and articulate meaning in given conduct which would be wholly innocent to the untrained observer' ") (quoting United States v. Fouche, 776 F.2d 1398, 1403 (9th Cir.1985)).
 
 
 6
 The affidavit describes Cook's various machinations to launder his own drug profits. Cook's parents and their residence play a prominent role in the scheme. The affidavit reveals Cook's frequent use of his parents' address to register purchases and to receive financial mail. A mail cover revealed eight letters addressed to Cook (and his dog, Lugar) arriving at 14525 S.W. Glenbrook in the span of three weeks. Two of the letters came from an investment company, two from a bank, and one from a risk management firm.
 
 
 7
 The affidavit also discloses, at a minimum, Cook's father's acquiescence in the use of his name on a bank account to hold Cook's money. Cook's stepmother, according to the affidavit, cooperated more actively with Cook. The affidavit depicts one instance in which Norma Jean Cook opened a bank account in the amount of $1,000 for Cook in the name of Cook's dog. On another date, Norma Jean Cook deposited two separate installments of $6,000 each into the account of Cook's wife. Norma Jean Cook approached two different tellers to complete the transaction, causing Welch reasonably to infer that Norma Jean Cook consciously evaded the requirement of filing a currency transaction report for deposits of $10,000 or more.
 
 
 8
 When read as a whole, we conclude that the affidavit establishes a substantial basis on which the magistrate could fairly conclude that contraband or evidence of the crimes of money laundering, drug trafficking, currency transaction report evading, and tax evasion could be located at the home of Cook's parents. Cf. Hernandez-Escarsega, 886 F.2d at 1564-67 (probable cause to search defendant's home, as well as the home of his estranged wife and daughter for records of drug transactions and money laundering); Espinosa, 827 F.2d at 610; United States v. Angulo-Lopez, 791 F.2d 1394, 1399 (9th Cir.1986) ("When the traffickers consist of a ringleader and assistants, a fair probability exists that drugs will be present at the assistants' residence as well as the ringleader's.").
 
 B. Staleness
 
 9
 Cook also complains that the evidence underlying the warrant was stale. The bank account evidence predated by one year the execution of the warrant. The mail cover was terminated two months prior to obtaining the warrant.
 
 
 10
 The mere lapse of time, however, does not alone establish staleness. United States v. Dozier, 844 F.2d 701, 707 (9th Cir.), cert. denied, 488 U.S. 927 (1988). Rather, we must consider the nature of the crime charged. Id. Where, as here, the affidavit establishes "a widespread, firmly entrenched, and ongoing narcotics operation in which [the defendant] played a pivotal role ... staleness arguments lose much of their force." Hernandez-Escarsega, 886 F.2d at 1566; see also Dozier, 844 F.2d at 707 (because marijuana cultivation is a long-term crime, staleness argument unavailing). The affidavit reveals, moreover, that the records sought "are the type of records typically found to be maintained over long periods of time." Dozier, 844 F.2d at 707; accord Hernandez-Escarsega, 886 F.2d at 1566. Thus, assuming the time periods at issue here are sufficiently long to give rise to staleness concerns,[2] we hold that the nature of the crime, Cook's role in it, and the type of records sought preclude a reversal for staleness.
 
 C. Specificity
 
 11
 Cook asserts that the broad reach of the warrant violates the fourth amendment's command of specificity in the designation of the items for which the police may search. The warrant sweeps within its reach any drugs, drug paraphernalia, currency, correspondence, envelopes, ledgers, financial records and statements, receipts, computer records, certificates of ownership, and registration papers found at the parents' home. The warrant lists at the bottom the six statutes for which evidence of a violation is sought.
 
 
 12
 The warrant's breadth cannot be gainsaid. Considering the nature of the crimes and the content of the Welch affidavit, however, we will not invalidate the warrant for its lack of specificity. "The specificity required in a warrant varies depending on the circumstances of the case and the type of items involved." Center Art Galleries--Hawaii, Inc. v. United States, 875 F.2d 747, 749 (9th Cir.1989).
 
 
 13
 The Welch affidavit disclosed an extensive money laundering scheme in which Cook's parents and their residence were closely intertwined. Cook used his parents' names and address to open bank accounts and to register purchases. Cook employed a variety of aliases in conjunction with the 14525 Glenbrook address. Consequently, the search could not be confined to materials in Cook's name only. Given the intermingling of money and the use of aliases, the officers had probable cause to believe that currency discovered in the home belonged to Cook and that financial records and business papers could belong to or reflect the activities of Cook's money, regardless of whose name appeared at the top. Furthermore, the police reasonably could suspect that other aliases and other uses of the parents' address remained to be discovered. Cf. United States v. Hayes, 794 F.2d 1348, 1356 (9th Cir.1986) (probable cause existed to seize all documents because "[t]he 58 known cases could fairly be considered as representative of more pervasive violations"), cert. denied, 479 U.S. 1086 (1987).
 
 
 14
 In Hernandez-Escarsega, 886 F.2d at 1568, we upheld a similarly phrased warrant because "there was probable cause to believe that all of Hernandez' personal and business activities were pervaded by his involvement with narcotics." Likewise, Cook's frequent use of his parents' address and his parents' names to launder his drug profits, and their apparent acquiescence (if not, in the stepmother's case, active involvement) in the process, cast suspicion on all of the money, records, and related items in the house. Had the warrant been limited to papers and property in Cook's name, the search would have fallen victim to Cook's precise strategy. The use of aliases and accounts and records in other peoples' names would have successfully cloistered Cook's drug profits from governmental scrutiny. Consequently, at the time the search was executed, the officers could not describe more particularly which currency, records, and the like in the house were traceable to Cook only. See Spilotro, 800 F.2d at 963 ("Warrants which describe generic categories of items are not necessarily invalid if a more precise description of the items subject to seizure is not possible."); United States v. Storage Spaces Designated Nos. "8" and "49", 777 F.2d 1363, 1370 (9th Cir.1985) (generic classification in warrant permitted because "the government did not have information allowing it to specify the precise names of other potentially misbranded drugs"), cert. denied, 479 U.S. 1086 (1987); United States v. Offices Known as 50 State Distrib. Co., 708 F.2d 1371, 1374 (9th Cir.1983) ("It was not possible through more particular description to segregate those business records that would be evidence of fraud from those that would not, for the reason that there was probable cause to believe that fraud permeated the entire business operation of 50 State."), cert. denied, 465 U.S. 1021 (1984). In sum, the breadth of the seizure is justified by the breadth of the probable cause in this instance. Id.[3]
 
 D. Expert Witness
 
 15
 Cook argues lastly that the district court erred in permitting DEA agent O'Connor to testify concerning the bundling of the money in the safe and the gun found with it.
 
 
 16
 The district court did not abuse its discretion in admitting this testimony. We have repeatedly confirmed the propriety of allowing law enforcement officers to testify about "the methods and techniques employed in an area of criminal activity." Espinosa, 827 F.2d at 612. Such testimony is proper even when it entails, as it did here, expressions of opinion on ultimate issues of fact for the jury to decide. United States v. Kinsey, 843 F.2d 383, 388 (9th Cir.), cert. denied, 487 U.S. 1223 (1988); United States v. Fleishman, 684 F.2d 1329, 1335 (9th Cir.) (expert opined that defendant was acting as a "lookout" and engaged in "counter surveillance"), cert. denied, 459 U.S. 1044 (1982); see also United States v. Stewart, 770 F.2d 825, 831 (9th Cir.1985) (DEA agent stated defendant probably was delivering drugs to customers), cert. denied, 474 U.S. 1103 (1986).
 
 
 17
 Moreover, the gaps in Officer O'Connor's expertise and possible alternative explanations for the money were thoroughly explored on cross-examination. In addition, the judge correctly instructed the jury on the proper treatment of expert testimony and, in particular, advised the jury that it could "disregard the opinion" if inconsistent with its own fact-finding.[4] We therefore hold that the admission of the testimony was not an abuse of discretion.
 
 
 18
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Because it is unclear whether, if given the opportunity, Cook could have introduced sufficient facts to demonstrate his standing to challenge the search of his parents' home and because it is clear that the government "in no way questioned" Cook's standing before the district court, we decline to decide this case on the ground that Cook lacks standing to challenge the search. United States v. Spilotro, 800 F.2d 959, 963 (9th Cir.1986)
 
 
 [2]
 But cf. Angulo-Lopez, 791 F.2d at 1399 (probable cause may continue for months after the last reported instance of suspect activity)
 
 
 [3]
 Because we hold that probable cause existed, we need not decide whether the district court erred in finding that the good faith exception, United States v. Leon, 468 U.S. 897, 926 (1984), encompassed this search
 
 
 [4]
 The jury instruction read:
 You have heard expert testimony. Experts may give opinions on those subjects in which they have special skills, knowledge, experience, training or education. You should consider each expert opinion in evidence and give it whatever weight it deserves. Remember, you decide all the facts. If, in reaching an opinion, an expert assumed that certain facts were true but you decide that any of those facts are not true, then you are free to disregard the opinion.
 The substance of this instruction is virtually identical to the one we specifically approved in Espinosa, 827 F.2d at 613 n. 4.