**UNITED STATES of America, Plaintiff-Appellee,**

v.

**James Dean McCOLLUM, Sr., Defendant-Appellant.**

**No. 85–5153.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 8, 1986.

Decided Oct. 14, 1986.

David Katz, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Hector C. Perez, Shipley & Perez, Santa Ana, Cal., for defendant-appellant.

Before KENNEDY, BEEZER, and HALL, Circuit Judges.

KENNEDY, Circuit Judge:

James Dean McCollum, Sr., appeals his convictions for mail fraud and the use of a fictitious name in violation of 18 U.S.C. §§ 1341, 1342. McCollum argues that the admission at trial of expert testimony regarding mail fraud in general and false directory schemes in particular was error. He also argues that the district court admitted hearsay statements by codefendant Del Swann in violation of the Confrontation Clause, that the supplemental jury instruction defining knowledge was erroneous, and that the evidence of his knowing participation in the fraudulent directory schemes was insufficient to support his convictions. We resolve these issues in favor of the government, and we affirm.

The decision to admit expert testimony is committed to the discretion of the trial judge and is not disturbed unless man-

ifestly erroneous. *United States v. Fleishman,* 684 F.2d 1329, 1335 (9th Cir.), *cert. denied,* 459 U.S. 1044, 103 S.Ct. 464, 74 L.Ed.2d 614 (1982). Assuming, without deciding, that the defendant entered a timely objection to the relevance and prejudicial impact of the expert testimony, its admission here was not error. Expert testimony regarding the typical structure of mail fraud schemes could help the jury to understand the operation of the scheme and to assess McCollum's claim of noninvolvement. *See United States v. Johnson,* 735 F.2d 1200, 1202 (9th Cir.1984) (expert testimony regarding general practice of criminals admitted to establish modus operandi); Fed.R.Evid. 702 (expert testimony admissible where helpful to jury). The probative value of the testimony was not so outweighed by prejudice to McCollum that exclusion was required. *See* Fed.R.Evid. 403 (relevant evidence may be excluded where its probative value is substantially outweighed by its prejudicial effect).

■ The admission of out-of-court statements by Swann did not violate McCollum's rights under the Confrontation Clause. While the record does not disclose under what rationale the district court admitted the statements, they properly could have been admitted against McCollum under Federal Rule of Evidence 801(d)(2)(E). There was independent proof of the existence of a conspiracy involving the defendant and Swann. *See United States v. Perez,* 658 F.2d 654, 658 (9th Cir.1981). There was, for instance, testimony that McCollum made payments to Swann connected with the directory scheme, instructed his son to cash checks received as part of the scheme, and filed a bank signature card for Energy Reports using an assumed name. There was also defendant's own admission at the time of his arrest that he knew Swann was engaged in a directory scheme, though he was not aware of its scope. Further, there is little doubt that Swann's statements—made in the course of obtaining Russell's participation in the schemes—were made in the course of and in furtherance of the fraudulent directory schemes. *See id.*

■ Given that the statements were properly admissible under Rule 801(d)(2)(E), the Confrontation Clause imposes no requirement that the declarant be shown to be unavailable before his out-of-court statements are introduced. *United States v. Inadi,* —— U.S. ——, 106 S.Ct. 1121, 1129, 89 L.Ed.2d 390 (1986). The government argues that *Inadi* permits us to dispense with any independent analysis of the reliability of the statements as well; we need not consider this argument, however, since we find the statements sufficiently reliable under the standards currently employed in this circuit. *See United States v. Ordonez,* 737 F.2d 793, 802–03 (9th Cir.1983) (identifying four factors to consider when assessing the reliability of out-of-court statements under the Confrontation Clause). The challenged statements by Swann describing the scheme were not statements of past fact, and did not present a serious risk of faulty recollection. They do not misrepresent McCollum's role in the directory scheme; in fact, they do not refer to McCollum at all. Finally, Swann's participation in the scheme suggests that he had personal knowledge of its design. In light of these indicia of reliability, we reject McCollum's confrontation claim.

■ McCollum next argues that the definition of knowledge in the supplemental jury instruction was erroneous. McCollum did not object to the definition when the instruction was given, but only to the giving of the instruction at all. In fact, counsel specifically told the court he was sure there was "no problem with the definition of the word knowledge." Consequently, we review the giving of the instruction only for plain error. *See, e.g., United States v. Vincent,* 758 F.2d 379, 383 (9th Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct. 116, 88 L.Ed.2d 95 (1985). Plain error is "'highly prejudicial error affecting substantial rights.'" *United States v. Krasn,* 614 F.2d 1229, 1235 (9th Cir.1980) (quoting *United States v. Giese,* 597 F.2d 1170, 1199 (9th Cir.), *cert. denied,* 444 U.S. 979, 100 S.Ct. 480, 62 L.Ed.2d 405 (1979)).

In its general instructions, the district court told the jury that in order to find McCollum participated in a fraudulent scheme in violation of section 1341 he must have "willfully and knowingly devised or participated in a scheme to defraud." The court defined a fraudulent statement as one "known to be untrue, or made with reckless indifference as to its truth or falsity, and made ... with the intent to deceive," and defined acting with intent to defraud as acting "willfully, and with the specific intent to deceive or cheat." It later defined willful participation as acting "voluntarily and intentionally ... to do an act which the law forbids," and said a defendant acts "knowingly" if he realized what he was doing and did not act through ignorance, mistake or accident.

The term "knowledge" was used when informing the jury that criminal liability under section 1341 is predicated on use of the mails. The court instructed that:

> One causes the mails to be used when one does an act with knowledge that the use of the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended.

In response to the jury's request to define "knowledge," the court said:

> Knowledge is simply what a person sees, hears or experiences through the use of human faculties or ought reasonably to observe, hear or experience in the ordinary use of human faculties.

■ The objective definition of knowledge provided in response to the jury's inquiry did not misstate the state of mind required to find McCollum used the mails. *Pereira v. United States,* 347 U.S. 1, 8–9, 74 S.Ct. 358, 362–363, 98 L.Ed. 435 (1954) (person causes use of the mails when such use can reasonably be foreseen); *United States v. Mastelotto,* 717 F.2d 1238, 1250 n. 12 (9th Cir.1983). If the court's definition of knowledge in response to the jury question likely would be understood as a contradiction of the court's previous instructions on the state of mind required to find that McCollum participated in a scheme to de-

fraud, appellant's point would have some merit, *see Powell v. United States,* 347 F.2d 156, 157–58 (9th Cir.1965), but we consider that possibility remote. The giving of the definition to the jury was not plain error, and as counsel did not object to its formulation, we find no ground to reverse.

■ Finally, McCollum argues that the evidence was insufficient (1) to find, as required to sustain his conviction under section 1341, that he knew of the fraudulent purpose of the Energy Reports directory scheme, and (2) to support his conviction for using a fictitious name, i.e., "The Red Book of Business and Industry." We must affirm if the evidence, when considered in the light most favorable to the government, would permit a rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). Here the evidence that McCollum handled the proceeds of the Energy Reports scheme, that he told his son proceeds from the cashed checks were for supplies that were never delivered to the son's warehouse as promised, and that he told his son, after the latter was contacted by postal inspectors, that legal problems would "be taken care of," as well as his remark on arrest that he knew Swann was engaged in a directory scheme though he did not know "how big or how bad" it was until he read it in the paper, provided a basis from which the jury could infer he participated in the scheme knowing its fraudulent nature. Moreover, there was evidence that McCollum continued to act as "banker" for Russell and Swann for approximately one month after the launching of the Red Book directory and paid two thousand dollars to Swann nine days after the mailing of the first Red Book invoices. Given the similar modus operandi of the two schemes—they both used the same mailing address, both involved Swann and Russell, and mailed invoices to some of the same victims—the jury could find McCollum guilty of using the fictitious name "The Red Book of Business and Industry"

to further a mail fraud scheme, without finding that he in fact acted as banker for that scheme.

Appellant's convictions are AFFIRMED.