42 F.3d 1392
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Terence H. HALL, aka J.R. Hall, aka John Hall, aka Terrance
Hall, aka Scott Talbott, aka Terry Hazen,
Defendant-Appellant.
 No. 92-2615.
 United States Court of Appeals, Seventh Circuit.
 Submitted Nov. 22, 1994.
Decided Dec. 1, 1994.
 
 Before POSNER, Chief Judge, and CUMMINGS and MANION, Circuit Judges.
 
 ORDER
 
 1
 A jury found Terence H. Hall guilty of seven counts of mail fraud, 18 U.S.C. Secs. 1341, 1342. Defendant's attorney has filed a motion for leave to withdraw, believing the appeal frivolous. See Anders v. California, 386 U.S. 738 (1967); 7th Cir.R. 51(a). We notified defendant of counsel's motion and his right to respond, Circuit Rule 51(a), and defendant has filed a response.
 
 
 2
 The evidence at trial showed that defendant established a company called Pioneer Development Services that placed advertisements in various newspapers across the country representing that Pioneer would issue credit cards and unsecured loans in exchange for a $30 fee. Witnesses who testified included employees of banks and credit card corporations with which defendant claimed he was associated; consumers who had applied for credit cards or loans and received nothing; and postal inspectors. Defendant collected at least $200,000 in fees from thousands of victims across the country. Defendant did not have the authority to issue credit cards or loans, and defendant did not issue any credit or loans to the applicants.[1] A typical advertisement reads, in part:
 
 
 3
 10.5% VISA!
 
 
 4
 Mastercard!
 
 
 5
 Loans by mail! Unsecured! Instant Approval!
 
 
 6
 Turned down? Bankrupt? No problem. Guaranteed.
 
 
 7
 Free Information: Pioneer Development Services.
 
 
 8
 In the Anders brief, counsel raises one potential issue for appeal: whether a due process violation occurred where the province of the jury was invaded when the district court permitted the government's expert witness to testify regarding the deceptive nature of the advertisements and materials mailed out to consumers by defendant.
 
 
 9
 Dr. David Gardner, a professor of business administration at the University of Illinois was qualified by the court as an expert in consumer behavior with regard to advertising.[2] Dr. Gardner testified that the advertisements were targeted to lower socio-economic groups through papers such as the National Enquirer. In his opinion, the advertisements would cause readers to believe that the "guaranteed" loans were available to anyone. The materials that Pioneer mailed to applicants would cause them to believe their applications had been approved, and all that stood between them and the loan or credit card was a $30 fee to Pioneer. Dr. Gardner pointed to phrases such as: "Unsecured!"; "Instant Approval"; "Guaranteed"; "No problem!"; "Approved"; and "Approval Confirmation Enclosed." The consumers would most likely disregard any implied disclaimer.
 
 
 10
 Defendant's attorney presents the possible argument that a "jury of average persons needs no help in deciding whether an ad campaign is deceptive." Expert testimony is admissible where it may be helpful to the jury. Fed.R.Evid. 702. In a case such as this, where a massive fraudulent scheme involves thousands of victims, an expert witness may be used to clarify what may be perceived as subtleties in the illusive and deceptive messages being sent out to the public. See, e.g., United States v. Aggarwal, 17 F.3d 737, 743 (5th Cir.1994) (no plain error to permit government expert to testify about fraudulent nature of loan scheme); United States v. McColum, 802 F.2d 344, 346 (9th Cir.1986) (expert testimony regarding typical structure of mail fraud scheme could help jury understand operation of the scheme). See also Kraft, Inc. v. FTS, 970 F.2d 311 (7th Cir.1992) (discussing various types of extrinsic evidence, including expert testimony, to establish the deceptive nature of advertising).
 
 
 11
 Defendant's attorney also poses the related argument that, because the Pioneer advertisement appeared in papers such as the National Enquirer, the "average" person would be immediately skeptical of it; thus, no expert witness was necessary. An assertion that the "average" person does read not the National Enquirer is seriously undermined by the fact that the publication has the largest circulation (about 3.4 million) of any newspaper in the United States.
 
 
 12
 After reviewing the record and the Anders brief, we find that an appeal would be frivolous, i.e., "groundless in light of legal principles and decisions." United States v. Eggen, 984 F.2d 848, 850 (7th Cir.1993), citing McCoy v. Court of Appeals, 486 U.S. 429, 436 (1988). Accordingly, counsel's motion to withdraw is GRANTED, and the appeal is DISMISSED.
 
 
 
 [1]
 The postal inspector sent out a questionnaire to those people whose names were found in defendant's files. Of the 200 people whom the inspector reached by telephone, none had received a credit card or loan. Based on the mail and telephone survey results, Dr. Sudman, an expert witness, opined that no more than one percent had received a credit card or a loan after they applied to one of the banks Pioneer referred them to. Several witnesses testified for the defense that they had applied to a bank on the list and ultimately received a credit card
 
 
 [2]
 Before trial, the district court denied defendant's motion in limine to exclude the testimony. At trial, Dr. Gardner testified over defendant's objection