47 F.3d 1176
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Fred FLETCHER, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Fadi RIZK, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Stephen HILL, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Rane BUSHMAN, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jose Martin REBELLON, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
William D. McBRIDE, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Merritt BUSHMAN, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Victor GESMUNDO, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Joseph ARIE, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Alexandrea Mae GESMUNDO, Defendant-Appellant.
 Nos. 93-50515, 93-50751, 93-50752, 93-50754 to 93-50757,
93-50804, 93-50812 and 94-50041.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 7, 1995.
Decided Feb. 24, 1995.
As Amended on Denial of Rehearing and Suggestion for
Rehearing En Banc July 13, 1995.
 
 Before: TROTT, FERNANDEZ and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 * A jury convicted ten defendants of violating 18 U.S.C. Sec. 1343 and 18 U.S.C. Sec. 2 by conspiring to commit wire fraud, committing individual acts of wire fraud, and aiding and abetting wire fraud in connection with a "boiler-room" telemarketing company. All ten defendants appeal their convictions and sentences. We have jurisdiction over this appeal pursuant to 288 U.S.C. Sec. 1291 and 18 U.S.C. Sec. 3742. We affirm all the convictions, but vacate all the sentences and remand for resentencing with respect to relevant conduct, and misrepresentation concerning acting on behalf of a charitable organization. On remand, the district court shall also determine whether to exercise its discretion to depart downward from Stephen Hill's Guideline range.
 
 II
 A. Sufficiency of Evidence
 1. Conspiracy and Wire Fraud
 
 3
 Fletcher and Joseph Arie argue that there was insufficient evidence to support their convictions for conspiracy to commit wire fraud and wire fraud. Fadi Rizk, Victor Gesmundo, Rane Bushman, Jose Martin Rebellon, William McBride, and Stephen Hill join in this argument. We affirm the convictions.
 
 
 4
 Evidence presented at trial is sufficient to support a conviction if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Adler, 879 F.2d 491, 495 (9th Cir.1988). To find a conspiracy among the defendants, the jury must find an agreement to accomplish an illegal objective; one or more acts in furtherance of that illegal objective; and the requisite intent to commit the underlying substantive offense. United States v. Medina, 940 F.2d 1247, 1250 (9th Cir.1991). Evidence of even a slight connection is sufficient to convict a defendant of knowingly participating in an established conspiracy. United States v. Mares, 940 F.2d 455, 458 (9th Cir.1991).
 
 
 5
 We conclude there was sufficient evidence from which a rational trier of fact could convict the defendants beyond a reasonable doubt. Evidence at trial established that AmTel's entire raison d'etre was to fleece unwitting customers: Although ostensibly a marketer of anti-drug materials, all the front-room salespersons and the reloaders used variations on the mystery pitch or "one-in-five" pitch to mislead their customers into believing they had won a fabulous prize. None of the various "corporate award departments" or "board meetings" through which these "prizes" were ostensibly awarded existed. We conclude that (1) testimony of defrauded customers; (2) undercover tapes; (3) photocopies of sales scripts found on AmTel's premises; and (4) signed personnel records of the various defendants, describing the policy of awarding customers a premium only in the amount of approximately 20% of what they paid AmTel, all amount to ample evidence of a scheme to defraud and individual acts of wire fraud by the various defendants.
 
 2. Aiding and Abetting Wire Fraud (McBride)
 
 6
 McBride argues that the evidence was insufficient to support his conviction for aiding and abetting. We affirm his conviction. He contends that mere association with AmTel as an employee should not be enough to convict him. But the jury convicted other defendants of substantive wire fraud crimes; this is enough to convict him of aiding and abetting. Furthermore, evidence at trial established that McBride himself told customers that AmTel spent $750,000 on prizes rather than on national television advertisements. McBride knew this was false. He also argues that an 80% mark-up is just capitalism at its best, and he attempts to pursue the reliance on counsel defense. The jury, however, rejected this defense. Finally, even if AmTel refunded monies to some disgruntled customers, the relevant issue was whether McBride intended to mislead at the time he pitched the customers and closed the deal. We conclude that ample evidence supports McBride's aiding and abetting conviction.
 
 B. Pretrial Issues
 1. Complexity/Continuance
 
 7
 R. Bushman argues that the district court erred in refusing to declare the case complex within the meaning of the Speedy Trial Act, and refusing to grant a motion for continuance. 18 U.S.C. Sec. 3161(h)(8)(A) and (b)(ii). Alexandrea Gesmundo, Rizk, Merritt Bushman, V. Gesmundo, Fletcher, Rebellon and Hill join in the argument. We affirm.
 
 
 8
 A denial of a motion for a finding of complexity is reviewed for clear error. United States v. Kamer, 781 F.2d 1380, 1389 (9th Cir.), cert. denied, 479 U.S. 819 (1986). A denial of a motion for continuance is reviewed for abuse of discretion. United States v. Torres-Rodriguez, 930 F.2d 1375, 1383 (9th Cir.1991).
 
 
 9
 The indictment was filed March 2, 1993. Apparently, the government orally moved for a declaration of complexity at a March 4, 1993 arraignment. The district court sua sponte reconsidered the motion and declared that the case was not complex. CR 31. At a May 3, 1993 pretrial hearing, the district court denied renewed defense motions for a declaration of complexity. Trial began May 18, 1993. From opening argument to closing argument, the trial lasted 18 days. The verdicts were returned on June 23, 1993.
 
 
 10
 R. Bushman argues that the district court abused its discretion in setting the case for trial early for the purpose of eliciting plea agreements in other, associated telemarketing fraud cases which were to be brought before that court. See Tr. of A. Gesmundo Sentencing, Dec. 3, 1993, at 34 ("I'm not going to lie to you--I specifically set this trial to be heard first for the very purpose that if this conviction was obtained, that it would save the other judges in the courthouse the necessity of trying these cases.") The government argues that eleven defendants is not an unusually large number, and that the questions at trial were not unusual or novel.
 
 
 11
 Although the timing of the trial proceedings was rather contracted, the denial of the motion for a declaration of complexity was not in clear error, and we therefore affirm. We also conclude the district court's denial of the motion for a continuance was not an abuse of discretion. Accordingly, we affirm the denial of the two motions.
 
 2. Denial of Motion to Sever
 
 12
 Rizk, M. Bushman and Hill argue that the district court should have granted their motions to sever. Because none of the defendants renewed their motion to sever at the close of evidence, we conclude this issue is waived. United States v. Smith, 893 F.2d 1573, 1581 (9th Cir.1990) (defendant waives severance motion by not renewing it at close of evidence); United States v. Sanchez-Lopez, 879 F.2d 541, 551 (9th Cir.1989) (failure to renew a motion for severance at the close of evidence suggests that the alleged prejudice from joinder did not seem so substantial in the context of the trial).
 
 
 13
 M. Bushman argues that he did not waive his severance motion, citing United States v. Vazquez-Velasco, 15 F.3d 833, 845 (9th Cir.1994). In that case, however, the defendant "diligently pursued" the motion, renewing it several times during the trial proceedings. Id. M. Bushman did not so pursue his motion, and we conclude he waived it.
 
 
 14
 Even if the defendants had not waived the issue, we would conclude on the merits that none of the defendants has shown "manifest prejudice," and that the district court did not abuse its discretion in denying the motion. Zafiro v. United States, 113 S.Ct. 933, 938 (1993) (severance appropriate "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence").
 
 
 15
 3. Denial of Motion to Strike Surplusage from Indictment
 
 
 16
 M. Bushman and McBride challenge the denial of the motion to strike surplusage from the indictment. Rizk, Hill, V. Gesmundo, R. Bushman and Rebellon join. The denial of a motion to strike surplusage is reviewed for abuse of discretion. United States v. Terrigno, 838 F.2d 371, 373 (9th Cir.1988). We affirm.
 
 
 17
 The defendants challenge the inclusion in the indictment of definitions of "boiler rooms" as illegal; use of phone names as indicative of an intent to defraud; and use of the word "victims" rather than "consumers" or "customers." The jury, however, was instructed that the indictment was not evidence. Tr. 3042. Furthermore, that putative "customers" of AmTel were victims was the gist of the case. Arguably, the assertion that it was part of the scheme to defraud for AmTel to permit the use of phone names--which is legal--was improper. But because that was the only problem with the indictment, and only arguably so, we conclude the district court did not abuse its discretion in denying the motion to strike surplusage. Furthermore, we note that any error arising from the implication that phone names were evidence of fraud was harmless, given the overwhelming evidence in this case.
 
 
 18
 4. Admission of Lorraine Murphy's Testimony Despite Discovery Violation
 
 
 19
 R. Bushman contends that the trial court abused its discretion in permitting the testimony of the "only" witness against him, Lorraine Murphy, in violation of its discovery order. Discovery issues are reviewed for abuse of discretion, and for R. Bushman to prevail, the abuse must result in prejudice to his substantial rights. United States v. Michaels, 796 F.2d 1112, 1115 (9th Cir.1986), cert. denied, 479 U.S. 1038 (1987). We affirm.
 
 
 20
 Although R. Bushman was informed the day before trial that Murphy would testify, she did not testify until three weeks later, and the district court offered additional funds to Bushman's counsel for investigation. R. Bushman says he was prejudiced because the notice the day before trial was to begin was the first he knew of evidence to be admitted against him as a salesperson, and not just a manager of the front room. But although R. Bushman was charged with various acts of wire fraud or aiding and abetting, the jury convicted him only of the one conspiracy count. Even if the district court abused its discretion in permitting Murphy to testify given the late notice, R. Bushman has shown no prejudice.
 
 
 21
 5. Failure to conduct medical examination of Rane Bushman
 
 
 22
 R. Bushman challenges the failure of the district court to conduct a medical examination to determine his competency to stand trial. The district court either did not consider the request or denied it. A denial of a request for an evidentiary hearing is reviewed for abuse of discretion. United States v. Author Services, Inc., 804 F.2d 1520, 1523 (9th Cir.1986), modified on other grounds, 811 F.2d 1264 (9th Cir.1987). We affirm.
 
 
 23
 The district court advised R. Bushman that if he were unfit to stand trial, his case would be severed out. Motions Hearing, May 17, 1993, at 44. R. Bushman attended trial every day. We conclude R. Bushman has shown no abuse.
 
 C. Evidentiary Issues
 
 24
 1. Denial of Motion to Strike Agent Rossi's Testimony Regarding Location where Ex. 11 and 14 were Found
 
 
 25
 A. Gesmundo argues that the admission of Agent Rossi's testimony regarding Exhibits 11 and 14 was a violation of both the hearsay rule and her Sixth Amendment right of confrontation. The government argues that the Exhibits were not hearsay. A district court's ruling admitting evidence over a hearsay objection is reviewed for abuse of discretion. United States v. Kirk, 844 F.2d 660, 663 (9th Cir.), cert. denied, 488 U.S. 890 (1988). The district court's decision as to the sufficiency of the chain of evidence is also reviewed for abuse of discretion. United States v. Sarmiento-Perez, 724 F.2d 898, 900 (11th Cir.), cert. denied, 469 U.S. 979 (1984). We affirm.
 
 
 26
 A. Gesmundo argues that because Agent Rossi was not the agent who actually seized the challenged documents, his testimony was based on hearsay, and thus inadmissible. Agent Rossi testified that Exhibits 11 and 14 were found in A. Gesmundo's office when the search warrant was executed at AmTel's premises. The documents, photocopies of pitches and rebuttals, were offered as circumstantial evidence of her knowledge of misrepresentations by the salespersons. As such, the government is correct in asserting that they were not hearsay, because the sales scripts were not offered for their truth. But the government misconstrues A. Gesmundo's argument. She contends not necessarily that the text of the sales scripts was hearsay, but that Agent Rossi's testimony about where those scripts were found was based on hearsay, that is, on what the agent who actually seized the sales scripts noted on the face of the copies of the sales scripts for identification.[1]
 
 
 27
 The parties apparently did not stipulate to any chain of custody regarding evidence seized during the execution of the search warrant on AmTel's premises on March 4, 1993. The government did not establish that the agents who actually seized the challenged documents were unavailable to testify, even though the district court suggested that if there were "a question about that, Ms. Craig [the Assistant United States Attorney] can put on the person who did seize them. I am sure the person is available." Tr. 813. Nevertheless, it appears to us that the district court admitted Agent Rossi's testimony conditionally. No later motion to strike was made when the government ultimately failed to meet the condition. See Anglo California Nat'l Bank v. Lazard, 106 F.2d 693, 705-06 (9th Cir.1939), cert. denied, 308 U.S. 624 (1940). Accordingly, we conclude that the district court did not abuse its discretion in admitting this testimony, or in failing to strike it when the discrepancy was first raised.
 
 
 28
 A. Gesmundo urges that if we decide this hearsay evidence should have been stricken, we should also conclude that the evidence is insufficient to support her conspiracy and aiding and abetting convictions. For even if she knew that AmTel provided no premiums valued at more than 20% of what customers paid, she argues there is no other evidence in the record showing that she knew of the misrepresentations made by the salespersons.
 
 
 29
 We do not so conclude. While there is ambiguous evidence to support her contention that she took actions to prevent the salespersons from making misrepresentations, see Tr. 2403-05, she did not and does not object to the admission of Exhibit 13--a "rebuttal" that Agent Rossi testified was found in her office. Tr. 551; see also Tr. 494-96. Accordingly, there was at least some evidence that she was aware of the misrepresentations her salespersons made in their pitches. We therefore affirm her convictions notwithstanding our conclusion regarding the admission of Exhibits 11 and 14. The error in this respect was harmless.
 
 
 30
 2. Exclusion of Testimony of Satisfied Customers
 
 
 31
 R. Bushman challenges the district court's exclusion on relevance grounds of testimony of satisfied customers. Rizk, M. Bushman and V. Gesmundo join. The district court's decisions regarding relevance of evidence are reviewed for abuse of discretion. United States v. Kessi, 868 F.2d 1097, 1107 (9th Cir.1989). We affirm.
 
 
 32
 R. Bushman, relying on United States v. Thomas, 32 F.3d 418 (9th Cir.1994), argues that satisfied customer testimony was proffered to negate--by demonstrating the defendants' good faith--the specific intent to defraud or knowledge that customers had been defrauded, an element required of the crime of conspiracy to defraud. The government argues that R. Bushman's reliance on Thomas is misplaced, but that in any case, the defense witnesses who were permitted to testify were those whose testimony was in accordance with Thomas--people who had received prizes which were higher in value than what they had sent in. See Tr. 1738-41, 1985-89.
 
 
 33
 The government is correct. Thomas is factually dissimilar and thus distinguishable. It concerned a complicated marketing scheme by which the defendant endeavored to obtain the highest price possible for fruit growers. He was accused of defrauding the growers, and only witnesses who had lost money under his scheme were permitted to testify. Here, in contrast, every sale was at a loss to the customers: no customer, except a few of the last ones, received a premium valued at more than about 20% of the amount of money the customer paid AmTel. The salespersons knew the value of the premiums, even if they did not select the actual premium to be sent out. The defendants offered no "averaging scheme" defense; they only offered a defense that they did not intend to defraud or did not know they were defrauding the customers. Even if there were some customers who were happy with their premiums, however, that some were tricked and had no complaints would not negate the defendants' intent to defraud; indeed, lulled customers would permit the scheme to continue, unabated by complaints.
 
 
 34
 Furthermore, the proffer was vague: no declarations of the three or four witnesses were tendered, and no clear statement of what they might say was ever offered to the district court. In addition, the rejection of the offer did not interfere with the defendants' ability to try to explain that their business was not a fraud. Because of the overwhelming evidence of knowing misrepresentation from, for example, the pitches and the personnel records signed by salespersons, we conclude that the district court did not abuse its discretion in excluding the additional "happy camper" evidence as irrelevant.
 
 3. Admission of Warren Rupp's Testimony
 
 35
 M. Bushman challenges the admission of Warren Rupp's expert testimony. Rizk, V. Gesmundo, R. Bushman, Rebellon and Hill join. The admission of expert testimony "is committed to the discretion of the trial judge and is not disturbed unless manifestly erroneous." United States v. McCollum, 802 F.2d 344, 345-46 (9th Cir.1986). We affirm.
 
 
 36
 The defendants analogize Rupp's testimony regarding the typical structure of telemarketing fraud schemes to drug courier profiles, and argue it was therefore improperly admitted because it was inherently prejudicial. We conclude that it was not "manifest error" for the district court to admit the testimony, because the testimony could probably have helped the jury to understand the operation of AmTel's scheme and to assess each defendant's attempt to distance himself or herself from its operations. McCollum, 802 F.2d at 346.
 
 
 37
 4. Exclusion of Testimony of Defense Witness Eric Altona
 
 
 38
 M. Bushman and V. Gesmundo challenge the exclusion of defense expert witness Eric Altona's testimony. Rizk, R. Bushman and McBride join. The exclusion of expert testimony is reviewed for abuse of discretion. United States v. Aguon, 851 F.2d 1158, 1171 (9th Cir.1988). We affirm.
 
 
 39
 Altona is an attorney who specializes in telemarketing law. He was not connected to AmTel. The district court excluded his testimony because he could not testify from personal knowledge that AmTel employees had attempted to comply with the law; neither could his testimony support their advice-of-counsel defense. We conclude that because Altona was not a percipient witness, the district court did not abuse its discretion by excluding his testimony. Whether AmTel participants attempted to comply with California telemarketing law or relied on advice of counsel could only have been attested to by a witness who had personal knowledge of the pertinent events. Altona did not. His "expert" testimony was properly excluded. Furthermore, any lay testimony by Altona would have been cumulative, because AmTel's own attorney Brian Boydston testified at length regarding AmTel's attempt to comply with California telemarketing registration statutes. Accordingly, we affirm.
 
 
 40
 5. Denial of Motion to Compel a Grant of Immunity to Ronald Chin
 
 
 41
 V. Gesmundo challenges the failure of the district court to grant immunity to AmTel's attorney Ronald Chin. Rizk, M. Bushman, R. Bushman and McBride join. A denial of a motion to compel a grant of immunity is reviewed de novo. See United States v. Montoya, 945 F.2d 1068, 1078 (9th Cir.1991). We affirm.
 
 
 42
 Generally a criminal defendant is not entitled to compel the government to grant immunity to a potential witness. United States v. Shirley, 884 F.2d 1130, 1133 (9th Cir.1989). When prosecutorial misconduct distorts the fact-finding process, however, an exception may be made if the defendant would otherwise thereby be denied a fair trial. United States v. Lord, 711 F.2d 887, 892 (9th Cir.1983). See also United States v. Westerdahl, 945 F.2d 1083, 1086-87 (9th Cir.1991).
 
 
 43
 Chin was sent a target letter from the U.S. Attorney's Office on March 25, 1993, shortly after the search warrant was executed on the AmTel premises on March 4, 1993. Tr. 2157-59. By the beginning of the trial, the government did not appear to have any plans to prosecute Chin. Chin planned to assert his Fifth Amendment rights if he were called to testify. The defendants argue the government sent the target letter in bad faith in order to prevent Chin from testifying. The trial court concluded that the government had not acted in bad faith and that excluding Chin's testimony would not distort the fact-finding process because the relevance of his testimony was questionable and would in any case have been cumulative of the testimony of AmTel's other attorney Boydston.
 
 
 44
 We agree with the district court's conclusions. Even if Chin's testimony were relevant to their good-faith defense, it would have been cumulative. Furthermore, it is not prosecutorial misconduct to correctly notify a target of a Grand Jury investigation, and Chin was legitimately a target: his office was on-site and the government had knowledge of his previous involvement in another telemarketing company, where he had provided custody to documents within his internal office apparently to protect them from a search. Tr. 2165-66, 2158. Accordingly, we affirm.
 
 
 45
 6. Exclusion of Testimony of Attorneys Kendall and Thomas
 
 
 46
 V. Gesmundo challenges the district court's exclusion of the testimony of two defense attorneys concerning what Chin had told them. Rizk, M. Bushman and R. Bushman join. This challenge is meritless, and we affirm.
 
 
 47
 The district court excluded the proffered testimony because it was hearsay. Tr. 2171-72. This ruling was a companion ruling to the decision excluding Chin's testimony. Because the testimony of the attorneys would have been hearsay, and cumulative to Boydston's testimony, we conclude the district court did not abuse its discretion in excluding it.
 
 
 48
 7. Admission of Rane Bushman's Post-Arrest Statement
 
 
 49
 R. Bushman challenges the admission of his post-arrest statement. The district court's balancing under Rule 403 of the Federal Rules of Evidence is reviewed for abuse of discretion. United States v. Patterson, 819 F.2d 1495, 1505 (9th Cir.1987). The district court's determination of the relevance of evidence is also reviewed for abuse of discretion. Kessi, 868 F.2d at 1107. We affirm.
 
 
 50
 R. Bushman's confession was admissible as a statement of a party opponent under Fed.R.Evid. 801(d)(2). His confession was relevant to the issue of his intent. We conclude that its probative value was not substantially outweighed by any danger of unfair prejudice, Fed.R.Evid.R. 403, and that the district court did not abuse its discretion in admitting the entire statement.
 
 D. Fundamental Unfairness of Trial
 
 51
 Various defendants raise challenges to the fundamental unfairness of the trial as a whole. They claim that the cumulative effect of trial court errors and the continual referral to AmTel customers as "victims" both on the indictment and during the trial amounted to such prejudice that reversal is warranted. These challenges are meritless, and we affirm.
 
 
 52
 We conclude that the cumulative effect of the trial errors claimed by the defendants was not cumulatively prejudicial because they put on a defense which lasted nearly two weeks, and because the government case was strong. See United States v. Berry, 627 F.2d 193, 201 (9th Cir.1980) ("the defendant is more likely to be prejudiced by error or misconduct when the government has a weak case"), cert. denied, 449 U.S. 1113 (1981). We also conclude that the district court did not abuse its discretion by permitting witnesses to refer to AmTel customers as "victims." This was a balancing question under Fed.R.Evid. 403. See Patterson, 819 F.2d at 1505.
 
 
 53
 E. Prosecutorial Misconduct During Closing Arguments
 
 
 54
 R. Bushman raises a prosecutorial misconduct challenge because of the Assistant United States Attorney's constant objections and interruptions. The decision of the district court to sustain objections to closing arguments is reviewed for abuse of discretion. United States v. Spillone, 879 F.2d 514, 518 (9th Cir.1989), cert. denied, 498 U.S. 864, 878 (1990), and cert. denied, 498 U.S. 878 (1990). The decisions of the district court allowing particular comments during closing arguments are also reviewed for abuse of discretion. United States v. Makhlouta, 790 F.2d 1400, 1403 (9th Cir.1986). His challenge is meritless, and we affirm.
 
 
 55
 A review of the trial transcripts reveals that R. Bushman's attorney invited the objections, especially during the closing argument. His attorney had been warned not to stray into forbidden areas during his closing argument, see Tr. 2870-72, but he did so anyway. See generally Tr. 2880-2916. We conclude the government's objections did not rise to the level requiring reversal, even under a de novo standard of review. See United States v. Christophe, 833 F.2d 1296, 1301 (9th Cir.1987) (reversal is warranted for prosecutorial misconduct only if it is more probable than not that the misconduct materially affected the verdict).
 
 F. Jury Instructions
 1. Good Faith Reliance Instruction
 
 56
 McBride, V. Gesmundo and R. Bushman argue that the district court erroneously instructed the jurors on a good-faith defense. Rizk, M. Bushman and Hill join. We affirm.
 
 
 57
 "Where a defendant's requested instruction is supported by some evidence, a trial court's failure to give it is reversible error." United States v. Sotelo-Murillo, 887 F.2d 176, 178 (9th Cir.1989). R. Bushman, who was convicted only of conspiracy, argues that reliance on counsel would have been a complete defense because if he believed AmTel was operating legally, he could not have entered into an agreement to achieve an illegal objective.
 
 
 58
 But while the district court did instruct the jury that "reliance on counsel is not a defense," it went on to instruct that:
 
 
 59
 [i]t is a circumstance indicating good faith which the jury is entitled to consider on the issue of fraudulent intent. In order to warrant consideration by you, however, the defendant is required to show that he or she fully disclosed all material facts to an attorney who is both unbiased and competent....
 
 
 60
 Tr. 3069. The judge also instructed the jury that "Good faith is a complete defense ... since good faith ... is inconsistent with intent to defraud or willfulness...." Tr. 3067. We conclude that the district court's instruction was properly inclusive of all the elements the defendants requested.
 
 
 61
 2. Belief in Repayment as Defense Instruction
 
 
 62
 McBride also challenges the refusal of the district court to instruct the jury that belief in repayment was a defense. Rizk joins. The challenge is meritless. McBride concedes that "While the court is technically correct that a good faith belief the consumer will be refunded is not defense per se," he nonetheless insists that "the jurors should have been allowed to evaluate this factor in determining whether the defendant(s) acted intentionally and wil[ ]fully to defraud AmTel's customers." We agree with Mcbride that the district court was "technically correct," and we therefore affirm.
 
 G. Sentencing Challenges
 1. Valuation of Loss
 
 63
 Arie and McBride challenge the district court's calculation of the loss generated by the AmTel conspiracy for sentencing purposes. Rizk, M. Bushman, V. Gesmundo, R. Bushman and Rebellon join. We vacate all of the defendants' sentences (except for V. Gesmundo, and A. Gesmundo's) and remand for resentencing because the district court failed to make the requisite findings.
 
 
 64
 The district court's application of the Sentencing Guidelines is reviewed de novo. United States v. Buenrostro-Torres, 24 F.3d 1173, 1174 (9th Cir.1994). The district court's findings of fact are reviewed for clear error. Id. Due deference is to be given the district court's application of the Guidelines to the facts. 18 U.S.C. Sec. 3742(e).
 
 
 65
 The district court expressly found at each defendant's sentencing that the total losses attributable to the conspiracy exceeded $2.5 million. Accordingly, each defendant's base offense level was adjusted 13 levels upward under U.S.S.G. Sec. 2F1.1(b)(1)(N). This finding was apparently based on Agent Rossi's gross calculation of AmTel sales from January 1, 1992 through March 3, 1993 (more than $3 million), less costs attributable to the "product" and "premium" provided to the customers. See Affidavit of Agent Rossi, September 14, 1993, SE 277.
 
 
 66
 The district court is to determine specific offense characteristics on the basis of the following: "in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity...." U.S.S.G. Sec. 1B1.3(a)(1)(B). Application Note 2 to Sec. 1B1.3 warns:
 
 
 67
 the scope of the criminal activity jointly undertaken by the defendant ... is not necessarily the same as the scope of the entire conspiracy, and hence relevant conduct is not necessarily the same for every participant. In order to determine the defendant's accountability for the conduct of others under subsection (a)(1)(B), the court must first determine the scope of the criminal activity the particular defendant agreed to jointly undertake (i.e., the scope of the specific conduct and objectives embraced by the defendant's agreement).
 
 
 68
 The government argues that all of the defendants are liable for the entire loss generated by the conspiracy because the losses were "reasonably foreseeable," and that the district court so found by reference to the PSR. The government further argues that each of the defendants knew and understood the scope of the criminal enterprise in which he or she participated. But the district court made no precise findings concerning the particular scope of agreement made by each individual defendant. The district court merely summarily found that the total amount of the loss had been established, and that because the defendants were convicted of conspiracy, they were all liable for the entire loss, regardless of when they joined the conspiracy. See, e.g., Tr. of R. Bushman Sentencing Hearing, Sept. 28, 1993, at 30 ("the law makes it clear that all parties are responsible for the loss generated by the company").
 
 
 69
 We conclude that the district court's determination was in error because it conflated criminal liability with liability for purposes of the sentencing guidelines. United States v. Conkins, 9 F.3d 1377, 1386-87 (9th Cir.1993) (district court erred by failing to make explicit factual findings regarding the relevant conduct for each defendant involved in a conspiracy; general and conclusory statement that all defendants involved in all transactions inadequate). Cf. United States v. Petty, 992 F.2d 887, 890 (9th Cir.1993) (relevant conduct is not necessarily the same for every participant, and each defendant must be sentenced on the basis of the quantity of drugs which he reasonably foresaw or which fell within the scope of his particular agreement with the conspirators).
 
 
 70
 Application Note 2 to Sec. 1B1.3 instructs that a defendant's relevant conduct does not include the conduct of other co-conspirators that occurred prior to the defendant's joining the conspiracy, even if the defendant knows of that conduct. All of the defendants (except William McBride, Alexandrea Gesmundo and Victor Gesmundo) joined AmTel around April, 1992--after January 1, 1992, from which date Agent Rossi calculated the loss generated by the AmTel scheme. The Gesmundos were involved from the beginning, but all of the other defendants joined the conspiracy later, either in April, 1992, or, in the case of McBride, in July, 1992. The district court made no attempt to distinguish losses generated before particular defendants joined AmTel from those generated afterwards. The conduct of each co-conspirator should have been evaluated separately and individually, to exclude losses generated by the conspiracy prior to the particular co-conspirator's joining. The district court should also have determined whether each co-conspirator was chargeable with losses generated after leaving AmTel. Accordingly, with the exception of both Alexandrea Gesmundo and Victor Gesmundo, for whom the calculation of loss is not in error, we vacate the 13-level upward adjustment applied to each of the other defendants and remand for specific findings and resentencing in accordance with the Guidelines.[2] At resentencing, the district court shall use as the value of the goods "the amount for which the victim could resell the product received." U.S.S.G. Sec. 2F1.1, Application Note 7(a).
 
 
 71
 2. Upward Adjustment for Vulnerable Victim (Sec. 3A1.1)
 
 
 72
 All the defendants (through Rebellon and Hill) challenge the district court's 2-level upward adjustment of their base offense level under U.S.S.G. Sec. 3A1.1. A district court's finding that the victims are vulnerable is reviewed for clear error. See United States v. Caterino, 957 F.2d 681, 683 (9th Cir.), cert. denied, 113 S.Ct. 129 (1992). We affirm the adjustment.
 
 
 73
 The Guidelines state: "If the defendant knew or should have known that a victim of the offense was unusually vulnerable due to age, physical or mental condition, or that a victim was otherwise particularly susceptible to the criminal conduct, increase by 2 levels." U.S.S.G. Sec. 3A1.1. Application Note 1 to Sec. 3A1.1 states:
 
 
 74
 This adjustment applies to offenses where an unusually vulnerable victim is made a target of criminal activity by the defendant.... But it would not apply in a case where the defendant sold fraudulent securities by mail to the general public and one of the victims happened to be senile. Similarly, for example, a bank teller is not an unusually vulnerable victim solely by virtue of the teller's position in a bank.
 
 
 75
 The Presentence Reports indicate that all defendants were given a 2-level upward adjustment because "senior citizens were the targets of AmTel." The defendants argue that the only evidence relied on by the PSRs to justify the vulnerable victim adjustment was that some of the targets of the conspiracy were elderly and that some of their birthdays were on lead cards.
 
 
 76
 The district court's findings at sentencing indicate it believed the victims were vulnerable because of a mix of factors--their age, but also the fact that the leads were derived from prior scams that the victims had fallen for, and that victims who were called by reloaders had been channelled to the reloaders precisely because they had been susceptible to the telemarketing fraud perpetrated by the front room salespersons and had already sent AmTel money.
 
 
 77
 The defendants did not call their victims out of the telephone book. They sought out and targeted people who had a track record of falling for fraudulent schemes. The findings of the sentencing judge in this regard are supported by the record. The defendants knew or should have known that the victims whose names were derived from purchased "leads," or who had previously sent AmTel money as a result of their conversations with frontroom salesmen, were more likely than others to succumb to further solicitations for money. See United States v. Peters, 962 F.2d 1410, 1415-18 (9th Cir.1992) (consumers with poor credit histories who defendants had singled out as targets for mail-fraud solicitation were "more likely than others to succumb" and were "particularly susceptible").
 
 
 78
 3. Upward Adjustment for Misrepresentation as Charitable Organization (Sec. 2F1.1(b)(3))
 
 
 79
 All of the defendants challenge the district court's 2-level upward adjustment of their base offense level under Sec. 2F1.1(b)(3).[3] We vacate all of the defendants' sentences (except M. Bushman's) and remand for resentencing on the ground that the upward adjustment for misrepresentation as a charitable organization is not supported by the record.
 
 
 80
 The district court's finding is clearly erroneous. The Guidelines state in relevant part: "If the offense involved (A) a misrepresentation that the defendant was acting on behalf of a charitable ... organization, or a government agency, ... increase by 2 levels." U.S.S.G. Sec. 2F1.1(b)(3). The Background Note states in relevant part: "Use of false pretenses involving charitable causes and government agencies enhances the sentences of defendants who take advantage of victims' trust in government or law enforcement agencies or their generosity and charitable motives.... [D]efendants who exploit victims' charitable impulses or trust in government create particular social harm."
 
 
 81
 The district court made conflicting findings in this regard. At some sentencing hearings the district court found that AmTel passed itself off as a charitable organization; at others it found that many of the remaining defendants, while not stating that they had acted on behalf of a charitable organization, had suggested that the money victims sent to AmTel was for a charitable purpose. There was no evidence adduced at trial establishing that the defendants ever claimed to be "acting on behalf of a charitable ... organization."
 
 
 82
 Although this is a close question, we conclude that the district court's finding on this issue was clearly erroneous. The Sentencing Guidelines require a misrepresentation that the defendant "was acting on behalf of a charitable ... organization." Merely playing to charitable instincts is not enough to warrant this upward adjustment. The district court's findings should have been consistent with the plain language of the Guidelines. We vacate the 2-level upward adjustment applied to each defendant (except for M. Bushman) and remand for resentencing. Upon resentencing, the district court shall not apply the 2-level upward adjustment under Sec. 2F1.1(b)(3) with respect to a misrepresentation concerning a charitable organization.
 
 
 83
 4. Discretion to Depart Downward from Hill's Guideline Range
 
 
 84
 Hill challenges the district court's conclusion that it lacked authority to depart downward from his sentence under the Guidelines. The government did not respond to Hill's challenge. A district court's legal determination that the Guidelines prevent departure is reviewed de novo if the district court indicated that it would otherwise have departed. United States v. Belden, 957 F.2d 671, 676 (9th Cir.), cert. denied, 113 S.Ct. 234 (1992). The district court stated at Hill's sentencing hearing that it was not departing downward from Hill's Guideline range because the Guidelines prevented it from doing so. Tr. of Hill Sentencing, Sept. 30, 1993, at 8-10. Application Note 10 to U.S.S.G. Sec. 2F1.1 states: "In a few instances, the loss determined under subsection (b)(1) may overstate the seriousness of the offense.... In such cases, a downward departure may be warranted." We conclude that the district court did have authority to depart downward, and we therefore vacate Hill's sentence and remand for reconsideration and resentencing on this issue.
 
 
 85
 5. Denial of Downward Adjustment for Acceptance of Responsibility (Sec. 3E1.1)
 
 
 86
 M. Bushman challenges the denial of a downward adjustment for acceptance of responsibility. Rizk, V. Gesmundo, R. Bushman and Rebellon join. We affirm the denial.
 
 
 87
 Whether a defendant has accepted responsibility is a finding of fact reviewed for clear error. United States v. McKinney, 15 F.3d 849, 852 n. 6 (9th Cir.1994). A district court's determination that defendants did not accept responsibility is not disturbed unless it is "without foundation." United States v. Aichele, 941 F.2d 761, 767 (9th Cir.1991).
 
 
 88
 Application Note 2 to U.S.S.G. Sec. 3E1.1 provides: "This adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse." All ten defendants put the government to its burden of proof at trial by denying the essential elements of guilt. We defer to the district court and affirm its finding that the defendants did not accept responsibility. See U.S.S.G. Sec. 3E1.1, Application Note 5 ("The sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review.")
 
 
 89
 6. Adjustments for Role in the Offense (Sec. 3B1.1, 3B1.2)
 
 
 90
 Rizk, A. Gesmundo, Arie, M. Bushman, R. Bushman and Rebellon challenge the district court's upward adjustment for their respective roles in the offense. Hill and Arie challenge the failure of the district court to adjust their offense level downward for a minor role in the offense. A role adjustment is reviewed for clear error. United States v. Hernandez, 952 F.2d 1110, 1119 (9th Cir.1991), cert. denied, 113 S.Ct. 334 (1992). We affirm these adjustments.
 
 
 91
 We conclude that: (1) A. Gesmundo's 4-level upward adjustment was warranted by her organizational role in creating AmTel (U.S.S.G. Sec. 3B1.1(a)); (2) R. Bushman and McBride's 3-level upward adjustment was warranted by their roles as front-room supervisors (U.S.S.G. Sec. 3B1.1(b)) (McBride's request for a downward adjustment for a minor role under Sec. 3B1.2 is meritless); (3) M. Bushman, Rizk and Rebellon's 2-level upward adjustment was warranted by their roles as reloaders, claiming a greater share of the proceeds and supervising at least one other employee (their secretaries) (U.S.S.G. Sec. 3B1.1(c)); and (4) Hill and Arie's roles were not minor or minimal because they were not "substantially less culpable than the average participant" (Sec. 3B1.2, Background Note). Accordingly, we affirm.
 
 III
 
 92
 We affirm the convictions of all the appellants, but vacate all of their sentences and remand for resentencing on the issues of (1) valuation of the loss attributable to each defendant; (2) misrepresentation concerning acting on behalf of a charitable organization; and (3) whether as a matter of discretion to depart downward from Hill's Guideline range.
 
 
 93
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 At trial, there was some confusion about these exhibits because the notations on the copies provided to defense counsel did not match Agent Rossi's chain of custody testimony. The government cleared up the confusion at a sidebar, explaining that many copies of the same sales scripts were found throughout AmTel's premises when they were searched, and although the copies provided the defense counsel indicated the scripts were found not in A. Gesmundo's office but in some other room, the copies from which Agent Rossi was testifying did, indeed, indicate that copies of the sales scripts were found in A. Gesmundo's office during the execution of the search warrant. Tr. 550-555, 806-13
 
 
 [2]
 The government argues that only McBride is eligible to make this argument, and that he waived it by failing to object at the sentencing hearing. A review of the transcript of the sentencing hearing reveals that McBride appears to have raised the issue, but his attorney did not vigorously argue it because the trend in the district court's sentencings of the other co-conspirators indicated that such an argument would have been futile
 
 
 [3]
 Although M. Bushman challenges this adjustment, we note that he waived the issue at sentencing by conceding the applicability of this adjustment. See Tr. of Sentencing, Sept. 27, 1993, at 7 ("It is a charitable purpose, we didn't contest. It was conveyed as a charitable person.")